[No. 8867.   Department One.   March 31, 1911.]

## I. M. WOMACH et al., *Respondents*, v. CASE THRESHING MACHINE COMPANY, *Appellant*.[1]

CORPORATIONS—ACTIONS—SERVICE OF SUMMONS—AGENTS.   Under the statute authorizing actions against a foreign corporation doing business in this state by serving of summons on any agent within the state, a domestic corporation appointed the agent at L. of a foreign corporation under a contract to sell its machinery for the season of 1909, at the prices and on the terms fixed by the principals, and account for the proceeds, is an agent upon whom service of summons may be made.

PRINCIPAL AND AGENT—POWERS OF AGENTS—LIMITATIONS—SALES. A contract for the sale of a separator, providing that general agents of the seller had no general agency powers, does not limit the powers of an agent sent by the company to deal with reference to conditions arising subsequent to the execution of the contract, when it was found that the machine was unable to do its work.

SALES—CONTRACTS—WARRANTY—TRIAL BY BUYER.   A contract for the sale of a separator, providing for notice if the machine failed to comply with the warranty after a trial of ten days, does not require a full ten days' trial, but only that a sufficient trial be given to demonstrate that it was incapable of doing its work.

SALES—CONTRACT—WARRANTY —NOTICE— DEFECTS— SUFFICIENCY. Where a contract for the sale of a separator provided that notice be given the seller of the failure of the machine to comply with the warranty, the fact that the buyer had purchased another machine before the notice was sent does not affect the timeliness of the notice.

SAME.   Under a contract for the sale of a separator, providing that notice of defects shall specify the defective part, a notice that the separator would not thresh and save the grain is sufficient, where the fault lay with the separator, and the cause could not be ascertained by the buyer or the seller's experts.

SALES—CONTRACT—CONSTRUCTION.   A clause in a printed form of a contract for the sale of a separator providing that defects as to one article should not release the buyer from the obligation of paying for the others, has no application to the distinct parts of the separator and its furnishings, where they were all parts of one machine and useless in case the separator failed to thresh the grain.

[1]Reported in 114 Pac. 509.

SALES—WARRANTY—WAIVER OF CONDITIONS. The seller of a separator waives its right to claim that the purchaser had not complied with the covenants of warranty, where after notice, and after its experts were unable to remedy the defect, the seller gave directions as to the disposition of the machine and refused to furnish another.

Appeal from a judgment of the superior court for Adams county, Kauffman, J., entered February 21, 1910, upon the verdict of a jury rendered in favor of the plaintiffs, in an action on contract. Affirmed.

*Belden & Losey*, for appellant.

*Lovell & Davis*, for respondents.

FULLERTON, J.—On May 21, 1908, the respondents ordered from the appellant certain machinery; namely, one steel separator, one steel wind stacker, one steel No. 8 Spokane feeder, one No. 6 bagger and spout, one separator brake, and one Oregon straw rack, agreeing to pay therefor the sum of $1,050, one-half on October 1, 1908, and one-half on October 1, 1910, with interest at eight per centum per annum from August 1, 1908. It was provided that the deferred payments should be evidenced by two promissory notes for $525 each, secured by a first mortgage on the machinery described. The order also provided that the purchasers

"Failing to . . . execute and deliver said notes and mortgage, properly filed or recorded, as a condition hereof, it is fully understood and agreed that the title to said goods shall not pass and this order shall at the company's option, stand as purchaser's written obligation and have the same force and effect as notes and mortgage for all sums not paid in cash, the whole amount of purchase money shall thereupon become then due and payable, and shall discharge the company from all warranty."

The order also contained the following warranties and conditions, namely:

"Said machinery is purchased upon and subject to the following mutual and interdependent conditions, and none other, namely:

"It is warranted to be made of good material, and durable with good care, to do as good work under same conditions as any made in the United States of equal size and rated capacity, if properly operated by competent persons with sufficient steam or horse power, and the printed rules and directions of the manufacturers intelligently followed. If by doing so, after trial of ten days by the purchasers, said machinery shall fail to fulfill the warranty, written notice thereof shall at once be given to J. I. Case Threshing Machine Company, at Racine, Wisconsin, and also to the agent through whom received, stating in what parts and wherein it fails to fulfill the warranty, and reasonable time shall be given to said company to send a competent person to remedy the difficulty, the purchaser rendering necessary and friendly assistance, said company reserving the right to replace any defective part or parts, and if then the machinery cannot be made to fulfill the warranty, the part that fails is to be returned by the purchaser, free of charge to the place where received, and the company notified thereof, and at the company's option another substituted therefor that shall fill the warranty, or the notes and money for such part immediately returned and the contract rescinded to that extent, and no further claim made on the company. Failure so to make such trial, or to give such notices in any respect, shall be conclusive evidence of due fulfillment of warranty on the part of said company and that the machinery is satisfactory to the purchasers, and the company shall be released from all liability under the warranty. Any assistance rendered by the company, its agents or servants in operating said machinery or in remedying any actual or alleged defects, either before or after the ten days' trial, shall in no case be deemed any waiver of, or excuse for, any failure of the purchaser to fully keep and perform the conditions of this warranty. When at the request of purchaser a man is sent to operate the above machinery, which is found to have been carelessly or improperly handled, said company, putting same in working order again, the expense incurred by J. I. Case Threshing Machine Company shall be paid by said purchaser. If any part of the machinery (excepting belting, which is not warranted) fails, from defect of material, while this warranty is in force, the company has the option to repair or replace the same, on presentation of the defective part or parts, but deficiency or

defect in any piece shall not condemn other parts, and the purchaser expressly waives all claim for damages on account of the nonfulfillment of said warranty by any of the above described machinery.   Each machine and attachment is ordered at a separate fixed price, which price, unless otherwise specially agreed, bears the same ratio to the aggregate price above specified as the company's 1908 list price of each said machine and attachment bears to the aggregate list price of all said machines and attachments.   This order is divisible as to each machine and attachment ordered, and the failure of any separate machine or attachment to fill the warranty shall not affect the liability of the purchaser for any other machine or attachment hereby ordered.   Should any machine or attachment be subject to return under this order, it shall be returned at the separate fixed price at which it was sold as above provided, and second-hand machinery or other property taken in trade shall not be taken into account.

"It is further understood and expressly agreed that general agents, so called, have no general agency powers, and any breach of this warranty or any omission on the part of the company does not confer any right of damage for delay or loss of work or earnings, or to other damages, and shall not affect the rights of the parties with respect to any other machinery sold the purchasers or any warranty of such other machinery and no cause of action arising out of this contract or transaction shall be offset or counterclaimed against any liability of the purchaser arising out of any other contract or transaction.   In no event shall the company be liable otherwise than for the return of cash and notes actually received by it.

"Failure to fully settle on delivery as above provided, or to comply with any of the conditions of this warranty on the purchaser's part, or any change in the printed terms of this warranty or the conditions thereof by any person whomsoever, agent or otherwise, by addition, erasure or waiver, or any abuse, misuse, unnecessary exposure of machinery, or waste committed or suffered by the purchasers, discharges the company from all liability whatever.   No representation made by any person as an inducement to give and execute this order shall bind the company.

"The company assumes no liability for nonshipment, delay in shipment or transportation.   Acceptance by purchasers is

a full waiver of any claim for delays in filling this order, arising from any cause. Attachments or devices specially ordered, and which are not made by this company, are not warranted. Any misrepresentation or concealment in making property statement, or any failure to secure notes as above provided, or to pay said notes when due, shall constitute a full release and waiver of all warranty.

"If crops in purchaser's vicinity are a failure and written notice is given to and received by the company at Racine, Wisconsin, before shipment, the delivery of the goods covered by this order may be deferred one year. In consideration of the expense incurred by the company in soliciting, investigating and taking this order, the purchaser promises and agrees to pay all freight charges on said machinery from the factory and 15% of the price above stipulated, in cash, in case he should cancel this order, or decline to accept said machinery. The purchaser hereby waives notice of the acceptance of this order by the company."

In due time after the receipt of the order, the machinery ordered was shipped to the purchasers, who received the same at the shipping point on the railway to which it was billed, paid the freight charges thereon in the sum of $165, and gave in payment of the machinery the promissory notes as provided in the contract. The machinery was taken to the home of one of the purchasers, where the separator was set up and run for a time in order to test the gearing and smooth the bearings. Sometime later, when the threshing season opened, they moved the machinery to the farm of a neighboring farmer whose grain they had contracted to thresh. On attempting to thresh the grain, however, it was discovered that the separator could not be made to work properly, as it would either waste the grain by blowing it over with the chaff and straw or fail to clean the heads properly. The respondents, after trying vainly for a couple of days to correct the defect, telegraphed the appellant at its office at Spokane, Washington, notifying it of the difficulty, and an expert was immediately sent to them to put the machine in order. What happened after the expert arrived is a matter of dispute in

the evidence. But since the jury have found in favor of the respondents, we are constrained to accept as true the version of the evidence which sustains their verdict.

Briefly stated, it appears from this evidence that the expert, after a day's trial in which he failed to correct the defect in the machine, called the appellant's general manager at Spokane, a Mr. Washburn, on the telephone and notified him of the fact; that the general manager appeared at the machine on the following day with another expert, and the three of them, assisted by still a third, employed in some manner and by some one not made clear in the record, after due trial failed in succeeding to make the machine thresh grain properly; that the general agent thereupon took the belts off the machine, rolled them up and placed them in the separator under cover, and on the respondents asking them at what railroad station he would have the machine delivered, told them to leave it where it then was. On the same or the next day the respondents requested the general agent to furnish them with a new separator, which request was refused. The respondents thereupon purchased a separator from another concern, and some two days later notified the appellant, by letter addressed to Racine, Wisconsin, that the machine purchased of it failed in the particular that it would not thresh grain and save it. To this letter the appellant responded by letter dated some five days later, acknowledging receipt of the respondents' letter, and stating, in substance, that all the company's matters in that territory were in the hands of Mr. Washburn, their general agent at Spokane, to whom this matter had been referred. Nothing further was done by either party until March 20, 1909, when the present action was begun on the warranty contained in the order to recover the purchase price of the machine, the freight charges paid, and damages and losses suffered by the respondents because of the inability to make the machine thresh in the manner warranted. In answer to the summons the appellant appeared specially and moved to quash the same on the ground

of insufficient service, and on its motion being overruled, appeared specially and answered, controverting the material allegations of the complaint, which special appearance it has maintained throughout the proceedings.   The jury at the trial returned a verdict for the respondents for the sum of $1,359.75, and from the judgment entered thereon, this appeal is taken.

The motion to quash the summons was founded on affidavits tending to show that the appellant, at the time of the commencement of the action, had no office for the transaction of business in the county in which the action was brought, and that there was no person residing therein on whom process against it might be served.   To these affidavits, however, counter-affidavits were filed tending to show, that the corporation upon which the service was made was engaged in the machinery business, having a store located in the county in which the action was brought; that it had a contract with the appellant in which it was recited that the appellant "doth hereby appoint said Chas. Labes & Company, Inc., agent at Lind, aforesaid, for the sale of its machinery, extras, supplies and repairs for the season of 1909;" and that quantities of the appellant's machinery was shipped to the corporation to be sold, which was exposed for sale and sold by the corporation.

The statute relating to the service of summons provides that, if the action be against a foreign corporation doing business within this state, the summons may be served on any agent thereof.   We think there can be no question that the corporation on whom the summons was served was the agent of the appellant within the meaning of the code.   It was not a person selling a particular brand of goods which it has purchased from the manufacturer, as the appellant seems to argue, but was on the contrary, selling the appellant's goods for the appellant, taking contracts in the name of the appellant, and accounting to it for the proceeds of the sale.   This is an entirely different transaction than the one under consideration

in the case of *Mikolas v. Walker & Sons*, 73 Minn. 305, 76 N. W. 36. There, as the court said, the relation between the parties was the very familiar one "between manufacturers and wholesale dealers, by which the manufacturer agrees to sell his goods only to a certain wholesale dealer in a city, who in turn agrees to buy them exclusively from the manufacturer, and to sell them at prescribed prices fixed by the manufacturer" in consideration of certain rebates from the usual prices. But here there was no agreement to buy the appellant's goods on the part of the agent. It simply took them as the appellant's property and agreed to sell them for the appellant, as the appellant's property, at such prices and on such terms as the appellant should direct, and account to it for the proceeds of such sales. In the first case there was. an outright purchase of the goods from the manufacturer by the dealer. After receiving the goods it could lawfully do what it pleased with them, rendering itself liable only to an action in damages for a breach of contract if it disposed of them in a manner contrary to its agreement. But in the case at bar, no such purchase was contemplated, and any interference with the appellant's ownership, outside of the strict terms of the agency contemplated by the agreement, would have been a subject of inquiry under the criminal statutes. Nor is the case of *McMaster v. Advance Thresher Machine Co.*, 10 Wash. 147, 38 Pac. 670, and the kindred cases following that decision, in point. In each of those cases the action was begun in a county where the defendant neither had an office for the transaction of business nor an agent on whom process against the company might be served. The motion to quash was properly denied.

On the merits of the controversy the appellant makes a number of contentions which will be noticed in their order.

The written order above set out, it will be observed, contains a recital to the effect that it "is further understood and expressly agreed that general agents, so-called, have no general agency powers." On the trial, after the respondents

had introduced evidence tending to prove that they had made such disposition of the property purchased, after they discovered that it could not be made to thresh, as the appellant's general agent directed, the appellant offered to prove that the agent had no power to authorize such a disposition of the machine, contending that the clause from the writing which we have quoted gave notice to them that the agent's powers were limited, and that he might not have authority to act in that behalf. The court rejected the evidence, and error is assigned thereon. We think the ruling correct. The clause in the writing quoted may have been a warning to the respondents that the agents procuring the order had no general agency powers, or powers to vary or add to the terms and conditions of the order, but it would be going far, indeed, to hold that it constituted notice that an agent sent by the company to deal with reference to conditions arising subsequent to the execution of the contract might not have the authority he actually exercised. Such a rule would lead to the grossest frauds. It would enable the principal to affirm those contracts made by the agent which redounded to his benefit, and repudiate all those that resulted in a loss.

The contract of purchase, it will be observed, provided that if the machine failed to comply with the warranty after a trial of ten days by the purchasers, notice thereof should be given the company at Racine, Wisconsin. The appellant contends that there was a breach of the condition, in that the respondents did not show that they gave the separator a ten days' trial. But while it is true that the evidence failed to show that the respondents endeavored to run the machine for ten full days, we think to require them to do so would be giving to the contract a too literal construction. It was the evident purpose of the parties, if they acted in good faith on entering into the contract, that the machine should be given a test sufficient to determine whether it would satisfactorily perform its functions, whether this should take more or less than the time fixed in the writing. Any other construction would lead

to absurd results. For example, it might be that the machine had a defect, capable of being corrected at the shops, which rendered it impossible to put it in motion. Would any one suppose that the purchaser must stay in a field for ten days and continually try to operate the machine before he could legally return it to the seller, after notifying him of the fact and receiving a refusal to correct the defect? This was not the meaning of the contract, and if the respondent gave it sufficient trial to demonstrate that it was incapable of threshing and saving grain—a question for the jury—they had the lawful right to return it to the seller, after notice of the fact to the seller and failure on the seller's part to put it in repair.

In this connection it is also argued that the notice sent to the appellant at Racine, Wisconsin, was not timely nor sufficient. It is objected that it was not timely because sent after the respondents had purchased a new machine. But we are unable to see how this fact could affect the timeliness of the notice. As we have stated, the appellant, in response to the notice, referred the respondents to Mr. Washburn, and then the matter seems to have been let drop. Mr. Washburn made no subsequent effort to put the machine in order, and certainly the respondents owed no duty to call upon him in the matter.

It is objected that the respondents did not give the appellant a reasonable time to correct the defects, and did not render them the friendly assistance required by the contract, but these objections raise in this case questions of fact for the jury, rather than questions of law for the court, and since the jury has determined them against the appellant, it must abide by the verdict.

It is next insisted that the respondents failed to specify in their notice to the appellant what part of the machinery proved to be defective, and for that reason the appellant lost its opportunity to supply the defective part. The notice stated the fact that the separator would not thresh and save the grain. This was sufficiently definite. It gave notice that

the fault lay with the separator.    True, it did not specify
what defect the separator had which caused it to fail to
thresh, but the evidence shows that this could not be ascer-
tained, either by the respondents themselves or the experts
sent to correct the defect.    Furthermore, it is said that the
separator was distinct from the wind stacker, the feeder, the
bagger and spout, the separator brake, and the Oregon straw
rack, and although the separator may have failed to work, the
respondents were obligated to keep and pay for these several
articles, although the separator itself may have been defective,
and since no fault was found with the manner in which they
operated, their value should have been deducted from the re-
covery.    But here, again, we think the appellant miscon-
strues the contract.    These articles were but a part of the
furnishings of the separator, so much a part, in fact, that they
would be utterly useless without the separator, and although
the language of the contract, literally construed, would seem
to lend color to the appellant's contention, we cannot think
such was its intent.    The blank upon which the order was
taken was evidently a standard form used by the appellant
applicable to the sale of a number of distinct machines, which
could well be said to be so far disconnected that the failure of
one to comply with the warranty ought not to relieve the
purchaser from liability as to the others.    But the clause in
the contract relied on is wholly inapplicable to a sale of a
single machine and its furnishings, even though the furnish-
ings be separately enumerated.

We have discussed the foregoing objections as if they were
open to the appellant.    We think, however, that when the ap-
pellant, in response to the respondents' telegram addressed
to it at Spokane, sent their experts to put the machine in
order, and those experts failed so to do, and after such failure,
and after the respondents had made known to them their in-
tention of surrendering the machine, gave direction as to its
disposition, and refused to furnish the respondents with

another separator, it waived its right to insist that the respondents had not complied with the covenants of warranty.

The judgment is affirmed.

MOUNT, PARKER, and GOSE, JJ., concur.