[No. 14745. *En Banc.* February 27, 1919.]

REINHOLDT GRAMS, *Respondent*, v. IDAHO NATIONAL
HARVESTER COMPANY, LIMITED, *Appellant*.[1]

CORPORATIONS (263) — FOREIGN CORPORATIONS — PROCESS — DOING
BUSINESS IN STATE—EVIDENCE—SUFFICIENCY. A foreign manufactur-
ing company is doing business in this state, within Rem. Code,
§ 226, subd. 9, relating to the service of process, where it had on
hand in a warehouse a large list of extras and repair parts of
machines sold, to be sold and accounted for as its property by the
warehouse company.

SAME (263) — FOREIGN CORPORATIONS — PROCESS — SERVICE ON
"AGENT." An employee of a foreign manufacturing company is an
"agent" for the service of process, where he was employed to do
whatever was directed by the general manager and was sent to A.
county in this state to check up and take possession of the com-
pany's stock of goods.

Appeal from a judgment of the superior court for
Adams county, Truax, J., entered February 23, 1918,
upon findings in favor of the plaintiff, in an action on
contract, tried to the court. Affirmed.

*Suppiger & Ogden* and *A. E. Galligher*, for appellant.

*G. E. Lovell*, for respondent.

MITCHELL, J.—This suit was commenced in Adams
county. It is based upon a claim, to the extent of the
purchase price, for the breach of an alleged warranty,
made by appellant through an agent, that a combined
harvester machine sold to plaintiff in Adams county
would do good work. The summons was served by
the sheriff, so his return shows, by delivering to M. C.
Priddy, in said county—he being the agent of defend-
ant corporation—a true copy of the summons and com-
plaint, on October 1, 1917. The defendant, by special
appearance, moved to quash the service upon the

[1]Reported in 178 Pac. 815.

grounds: (1) That the summons was not served upon any agent of the defendant company within the state of Washington; and (2) that it was not doing business within this state at any time, other than interstate commerce business. Upon a trial, on supporting and counter affidavits, the motion to quash the service was denied. Defendant refused to plead further and there was judgment for plaintiff as demanded in the complaint. Defendant appeals.

As stated by appellant, there are two questions involved: (1) Was appellant *doing business* in this state at the time of the service on M. C. Priddy? (2) Was M. C. Priddy an agent of the appellant at the time of the service on him, within the meaning of subd. 9, § 226, Rem. Code?

The substance and weight of the proof are as follows: Appellant is a foreign corporation with its principal place of business at Moscow, Idaho. It is engaged in the manufacture and sale of combined harvester machines. In 1917 it made an oral contract with one J. W. Russell, of Spokane, to solicit purchasers, all sales to be made subject to the approval of appellant. In the summer of 1917, Russell, as agent, procured from respondent, at Ralston, Adams county, Washington, a written order for one of the machines. The order contained a warranty clause that the machine would do good work, provided, if upon trial it failed to do so, the appellant should be notified and given an opportunity to put the machine in good order. It was further agreed therein:

"If the machine can not then be made to work, the purchaser shall immediately return it to said agent and the price paid shall be refunded, etc."

It was further provided:

"This order is to be sent to the Idaho National Harvester Company, Ltd., Moscow, Idaho, for acceptance

or rejection and shall be binding on said company when accepted hereon.''

The shipping directions were:

''You will please ship, on or before the 1 day of July, 1917 (or as soon thereafter as possible) to Ralston (Station), state of Washington, in care of J. W. Russell, agent.''

It was also signed ''Sold by J. W. Russell.'' The order was forwarded to the appellant at Moscow, and in due time the machine was shipped. It was delivered by J. W. Russell to the respondent on his farm. The machine did not give satisfaction. Russell went out with a mechanic several times and tried to make it work, stated it could not be made to work and that the company would take it back. M. C. Priddy, another agent of the company, went out to the farm to see the machine and told respondent the company would take it back. Afterwards, on the orders of Priddy and Russell, other farmers in the community took various parts of the machine to repair their machines recently purchased from appellant through Russell; and both Russell and Priddy took various parts of respondent's machine to repair the machines of others. A number of machines were sold and delivered by Russell in the vicinity of Ralston; and on complaints from several of them Russell, Priddy and their experts called on the farmers and tried to put the machines in working order.

There is located at Ralston the Union Elevator & Warehouse Company, which does, among other things, a mercantile business, one L. O. Thomas being its manager. In July, 1917, at Ralston, Russell, while unloading harvesting machines, putting them together, and superintending the delivery of them to various customers, as agent of appellant, stated to Thomas,

as manager of the mercantile company, that it was necessary to have an agency there to sell repairs for the machines; and made arrangements with him, as manager of the Union Elevator & Warehouse Company, for the sale of the same on a commission, the goods remaining the property of the appellant until sold. Russell left with Thomas a list of repair goods that would be forwarded. In August a large number of repair articles were shipped by appellant, consigned to and received by the Union Elevator & Warehouse Company at Ralston. Later, on request of Thomas, appellant sent a list of the articles with directions how to sell and handle them. At various times Thomas sold repairs to different persons, among them one Edward Friese. After the sale to Friese, upon being asked by Thomas for payment, Friese settled the account by delivering to Thomas what was termed a "warranty voucher," drawn by appellant, signed by M. C. Priddy as agent, authorizing delivery to Friese at appellant's expense the articles theretofore sold by Thomas. In October, 1917, after harvest, M. C. Priddy went to the place of business of the Union Elevator & Warehouse Company at Ralston, made an inventory of all repair articles on hand, represented to Thomas that appellant needed the stock at its office in Moscow, took the goods, shipped them to appellant at Moscow, and gave Thomas a receipt for them.

M. C. Priddy testified that, on the day the summons was served on him, he was in Adams county for the purpose of checking and handling a stock of extras or repair parts of the machines on hand with the Union Elevator & Warehouse Company at Ralston, having been sent by the manager of appellant to do this particular work. He held no official position with appellant. He worked by the month for a salary and had no regular kind or class of work, but did different work

and performed different duties as the manager of appellant instructed, assigned, or directed him to do. The general manager of the company at Moscow, Idaho, corroborates M. C. Priddy as to the character of the latter's relations with the company and the purpose of the trip to Adams county.

Appellant reduces the inquiry in this cause to two points, being the same as those mentioned in its motion to quash the service heretofore set out.

The statute relating to the service of summons provides, if the action be against a foreign corporation doing business within this state, the summons may be served on "any agent" thereof. In argument, respective counsel have called attention to a large number of cases on this subject by this and other courts. They differ more or less as to the facts. The point as to whether or not appellant was *doing business* in this state at the time of the service of the summons must be answered in the affirmative. At the time, in Adams county, the Union Elevator & Warehouse Company had on hand a large list of extras and repair parts of the machines for sale, put there by appellant by direct shipment to be sold, and many of the articles were sold, as appellant's property, under an agreement to sell them as directed by appellant and account to it for the proceeds of all such sales. Such situation responds to the requirements of the statute and constitutes *doing business*. The case of *Womach v. Case Threshing Machine Co.*, 62 Wash. 661, 667, and 668, 114 Pac. 509, was similar to this. It was a case of selling by a foreign corporation, through an agency for a single season, of extras, supplies and repair parts for machines. In the course of that opinion, this court said:

"This is an entirely different transaction than the one under consideration in the case of *Mikolas v.*

*Walker & Sons,* 73 Minn. 305, 76 N. W. 36.   There, as
the court said, the relation between the parties was
the very familiar one 'between manufacturers and
wholesale dealers, by which the manufacturer agrees
to sell his goods only to a certain wholesale dealer in
a city, who in turn agrees to buy them exclusively from
the manufacturer, and to sell them at prescribed prices
fixed by the manufacturer' in consideration of certain
rebates from the usual prices.   But here there was no
agreement to buy the appellant's goods on the part of
the agent.   It simply took them as the appellant's
property and agreed to sell them for the appellant, as
the appellant's property, at such prices and on such
terms as the appellant should direct, and account to it
for the proceeds of such sales.   In the first case there
was an outright purchase of the goods from the manu-
facturer by the dealer.   After receiving the goods it
could lawfully do what it pleased with them, rendering
itself liable only to an action in damages for a breach
of contract if it disposed of them in a manner con-
trary to its agreement.   But in the case at bar, no
such purchase was contemplated, and any interference
with the appellant's ownership, outside of the strict
terms of the agency contemplated by the agreement,
would have been a subject of inquiry under the crim-
inal statutes."

Upon the second branch of the case, we think there
can be no question that M. C. Priddy, at the time of
the service of the summons and complaint upon him,
was "an agent" of the appellant, within the contem-
plation of the statute.   For some time he had been, and
was still, employed to do whatever he was directed to
do by the general manager of the company; and at
the time in question, under instructions of the com-
pany, he was in Adams county to check up and take
over all the property of appellant remaining in the
hands of the Union Elevator & Warehouse Company.
While there, he rendered that service and gave the
merchant a receipt for the goods, took the goods, and

shipped them to his principal, the appellant. This
court, in the case of *Barrett Mfg. Co. v. Kennedy,* 73
Wash. 503, 131 Pac. 1161, after enumerating a number
of cases from this and other courts upon this subject,
further refers to some of them and concludes as fol-
lows:

"In the *Jenkins* case [73 S. C. 526, 53 S. E. 991], a
service of summons upon a timekeeper of the defend-
ant, a foreign corporation, was held sufficient. The
court said that the legality of the service did not de-
pend upon the tenure of service, but 'upon the char-
acter or nature of the service,' and that 'agency may
also be shown by the fact that a person represents the
master in some one or more of his relations to others,,
even though he may not have power to contract. The
statute makes service on 'any agent' of a foreign cor-
poration sufficient. The statute, therefore, does not
require that the agent shall be general, but is complied
with by a service upon an agent having limited author-
ity to represent his principal.' In the *Cottrell* case
[83 Va. 512, 3 S. E. 123], the court defined the term
'agent' as signifying 'any one who undertakes to
transact some business affair for another by authority
and on account of the latter, and to render an account
of it.' In the *Moinet* case [143 Mich. 489, 106 N. W.
1126], it was held that a traveling salesman of a
domestic mercantile company is an agent within the
meaning of the statute permitting service of process
'upon the agent' of a corporation. The words of the
statute 'any agent' were intended to have a broad
meaning, and must be liberally construed to effectuate
the legislative intent. While they may not include
a day laborer or an employee who has no authority
to represent the corporation in any way other than
to discharge his daily task, they must be held to in-
clude all such agents as represent the corporation in
either a general or a limited capacity."

Having seen that appellant was doing business
within the state at the time of the service of the sum-
mons, makes it unnecessary to consider its contention

of protection under the commerce clause of the Federal constitution.

Affirmed.

CHADWICK, C. J., MOUNT, MACKINTOSH, HOLCOMB, MAIN, PARKER, and TOLMAN, JJ., concur.