[No. 16058.   Department One.   November 10, 1920.]

# H. B. WATSON *et al.*, *Respondents*, v. OREGON MOLINE PLOW COMPANY, *Appellant.*[1]

CORPORATIONS (263)—FOREIGN CORPORATIONS—ACTIONS—SERVICE OF PROCESS—AGENTS.  A contract between a foreign corporation manufacturing tractors, and a local dealer does not create an agency within Rem. Code, § 226, subd. 9, authorizing service of process upon any "agent" of a corporation doing business in this state, where, by the contract, the dealer agreed to buy a certain number of tractors, to be resold in a certain territory only, to make deposits on shipments, to use its best efforts in canvassing for sales, to take orders on printed forms of the company, in whose name the tractors were to be shipped, with title vested therein until paid for; and an agency is not created by the fact that the dealer agreed to make no warranty other than that appearing on the company's order blank, and to employ an expert and give the company notice if its expert service was required to demonstrate the machines.

Appeal from a judgment of the superior court for Lewis county, Reynolds, J., entered March 3, 1920, upon findings in favor of the plaintiffs, in an action on contract, tried to the court.  Reversed.

*J. D. Campbell* and *A. A. Hull*, for appellant.

*R. S. Holt* and *U. E. Harmon*, for respondents.

MACKINTOSH, J.—Summons and complaint in this action were served upon the Frank Everett Company, at Chehalis, Washington, the respondent contending that that company was an agent of the appellant, a foreign corporation doing business within the state. The appellant moved to quash the service of summons, which motion was denied, and that ruling is assigned as error on this appeal.

Section 226, subd. 9, Rem. Code, provides:

"The summons shall be served by delivering copy thereof, if the suit be against a foreign corporation or

[1]Reported in 193 Pac. 222.

nonresident joint stock company or association doing business within this state, to any agent, cashier or secretary thereof.''

The record shows that the Everett Company held a contract with the appellant by the terms of which the Everett Company agreed to purchase a certain number of tractors during the year, at an agreed price, and to pay for them in cash when received, and after resale by the Everett Company, it was to be entitled to certain discounts, provided it sold a certain number of tractors. The Everett Company bought other merchandise from the appellant, paying cash therefor.

The contention of the respondent is that this contract created an agency between the Everett Company and the appellant. In order to determine whether this contention is sound it is necessary to examine the terms of the contract. The contract on its face appears to be a contract of sale; the contract in its opening clause saying:

''The company sells and the dealer buys the goods ordered in this contract . . . to be shipped according to schedule herein . . . The dealer agrees to sell said tractors in the following described territory only . . . and hereby deposits with the company $300, said deposit to be refunded . . . when the last of the above ordered tractors shall have been shipped and paid for, and to be retained by the company as liquidated damages in case the dealer fails to accept and pay for all tractors purchased herein . . . The prices named herein apply to this order only. Subsequent orders at prices then prevailing. . . . Said company will allow said dealer a discount of 15% from the above specified prices. . . . Discounts are payable only to dealer when purchase price is paid in full. No discount will be allowed dealer if tractor is refused by purchaser.''

The contract then proceeds to specify the dealer's agreements, which are, first, to use its best efforts in

canvassing for the sale of tractors, and to furnish a list of prospective purchasers to the appellant, and report on all prospects of sale referred to it by the appellant; and second, to take from the Everett Company's customers an order on the printed form furnished by the appellant, "which form contains a written warranty thereon and said dealer will make no other warranty"; to send to appellant original order blanks with shipping instructions; third, "to offer, advertise and sell the tractors on terms which shall provide that tractor shall be shipped with bill of lading attached to sight draft. Tractors to be shipped in the name of the company and title to remain vested in it until fully paid, when tractor becomes the property of purchaser. If purchaser does not pay the sight draft covering balance of purchase price promptly, then the payment accompanying order on the deposit is forfeited and shall be retained by the company as agreed and liquidated damages"; fourth, to accept the general guarantee of the appellant as its warranty; fifth, if appellant's expert service is required on any tractor, the Everett Company will notify the appellant and give it ample time to send an expert to demonstrate the tractor; Everett Company agrees to keep in its employ during the period of the contract an expert competent to render all service in connection with the tractors; sixth, not to sell tractors outside of the territory described in the contract; seventh, to "make full payment in all cases for each tractor to the company"; eighth, to carry in stock the necessary parts for tractors and to pay in cash for extra and repair parts; ninth, in case the Everett Company does not canvass for and push the sale of tractors, the appellant reserves the right to sell in the territory allotted to the Everett Company; tenth, that the Everett Company has no

power to incur indebtedness or liability in the name of the appellant. The contract then provides that it shall be "terminated on July 31, 1919."

The true relationship between the Everett Company and the appellant must be determined from a reasonable examination of this contract. An agent must be one who has a representative capacity and derives authority from a principal, and an agency cannot be created by construing an instrument contrary to the intention of the parties to it. This contract, upon its face, would seem to be the ordinary one between a manufacturer and dealer, under which arrangement the manufacturer agrees to sell, and the dealer agrees to buy, and to use his best efforts in re-selling, the property; in consideration of which the manufacturer agrees to give the dealer certain rebates from the price stipulated in the contract. It would appear that the Everett Company had no authority to act for or represent the appellant; that it was buying the goods and selling them again on its own account, and the fact that there were collateral conditions and restrictions would not constitute the Everett Company an agent. The Everett Company at no time had any merchandise belonging to the appellant unless it had already paid for such merchandise.

The respondent, however, while conceding that the contract, in the main, is one for the sale and purchase or merchandise, claims that certain provisions in the contract create the relationship of principal and agent, and that the contract in that respect has a dual nature. It is pointed out that the Everett Company assumed various obligations and duties in connection with the purchase of the tractors, which resulted in the Everett Company becoming the agent of the appellant. Referring to these duties, it cites the provisions that have

been noted in paragraphs 1 and 9. As we view these provisions they are nothing more than the ordinary arrangements between a manufacturer and a wholesaler, aimed by the appellant to secure activity by the Everett Company in its efforts to sell the appellant's product.

Some claim is made that, under paragraph 3, the tractors were to be shipped directly to the Everett Company's customers, who were to pay for the tractors, and title was to remain in the appellant until the purchase price was paid. A reference to the balance of the contract, and especially to paragraph 7, shows that the real arrangement was that the tractors were to be paid for by the Everett Company; and as the contract fixed no price at which the Everett Company must sell to its customers, it naturally follows that the drafts accompanying the bills of lading would not run to the Everett Company's customers, but to the Everett Company itself.

Principal reliance is laid upon the provisions of paragraph 2, in support of respondent's contention that the Everett Company was the appellant's agent. It is argued that, by the terms of this paragraph, the Everett Company, in making a sale, was not acting as an independent dealer, but was making a warranty in behalf of the appellant, and that it was appellant's duty to protect the warranty made, which duty was to be performed through the Everett Company, thus creating a further agency.

The contract binds the Everett Company to make no other warranty than that appearing on the appellant's order blank; but the making of a written warranty by a dealer is, as we view it, no different in its nature than the creating of the warranty which the law imposes upon every manufacturer and which follows in favor

of the purchaser from every dealer. If respondent's position is sound, it must be that every time a manufactured article is purchased from a dealer that, by reason of the fact that there accompanies the purchase the warranty which the law imposes upon the manufacturer, by the act of making the sale, the dealer has performed some act in behalf of the manufacturer, and thereby has become the manufacturer's agent; in other words, the result of a holding such as is contended for by the respondent would be that every dealer in manufactured articles would become the agent of the manufacturer. This position, of course, is untenable for many reasons; it was not the intention of the parties, nor was it in the contemplation of persons engaged in business. Such a rule would lead to infinite confusion and injustice. When the Everett Company sold the tractors to its purchasers, according to the terms of the contract, it said to such purchasers: "We are selling these tractors with a written warranty, and this warranty takes the place of the warranty which arises by operation of law in your favor and against the manufacturer." The fact that the Everett Company was forbidden to make any other warranty than the one contained on the order slip is indicative of a lack of agency rather than of agency.

The fact that, if these tractors did not meet the requirements of the warranty, the appellant agreed, upon notice from the Everett Company, to send an expert to demonstrate the tractors, furnishes no evidence of agency, but is the usual and ordinary conduct of manufacturers desirous of maintaining their reputations.

The further provision that the Everett Company should keep in its employ a competent man to demonstrate and repair machines sold by it did not make that

company the agent of the appellant, but was a part of the same general plan as that just referred to. In other words, where a manufacturer of goods sells those goods to a middleman and passes absolute title, and the middleman agrees to do those things which tend to maintain the reputation of the manufacturer and to make easy the sale of the goods, and the manufacturer, on its part, agrees to make good its product and to assist the middleman in his business, and the whole transaction is such as ordinarily takes place, the courts are not, contrary to the intention of the parties and contrary to the ordinary usages of business, going to say that the middleman is an agent of the manufacturer upon whom service may be made in actions against the manufacturer.

This case does not fall within the facts of the case of *Grams v. Idaho National Harvester Co.,* 105 Wash. 602, 178 Pac. 815, for in that case the person upon whom service was made was employed to act under the orders of the general manager of the manufacturer, and at the time of service was acting under instructions from the manufacturer and was engaged in its business.

In the case of *Womack v. Case Threshing Machine Co.,* 62 Wash. 661, 114 Pac. 509, the person upon whom service was made "was selling appellant's goods for appellant, taking contracts in the name of appellant, and accounting to it for the proceeds of the sale."

In *Barrett Mfg. Co. v. Kennedy,* 73 Wash. 503, 131 Pac. 1161, service was made upon a person having sole charge of the defendant's warehouse, empowered to ship out and receive freight, make out shipping bills, sell goods and solicit orders.

In none of the cases to which our attention has been called has service been sustained where, as here, the

contract between the manufacturer and the dealer gives no authority to the dealer to act for or represent the manufacturer, and where, according to the terms of the contract, each party was acting for itself as principal. The fact that, in connection with the purchase and sale, there were "some collateral conditions and restrictions would not create the relation of principal and agent between them." *Mikolas v. Hiram Walker & Sons,* 73 Minn. 305, 76 N. W. 36.

The lower court was in error in denying the motion to quash the service. For that reason the judgment is reversed.

HOLCOMB, C. J., BRIDGES, and PARKER, JJ., concur.