ANHEUSER-BUSCH, INC., *v.* MANION.

4-4494

Opinion delivered January 11, 1937.

406

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*H. U. Williamson* and *Fred M. Pickens,* for appellee.

BAKER, J.   The appellee, Ed Manion, brought this suit in the Jackson circuit court against the appellant, Anheuser-Busch, Inc., for damages, which he alleged he sustained on account of drinking from a bottle of Budweiser beer, put up, bottled and sold by the appellant, and that this drink contained a poisonous substance that made him violently ill within a few minutes; that he bought the beer in Jackson county, Arkansas, from a retail dealer.   Summons was issued by the clerk of the circuit court of Jackson county, directed to the sheriff of Pulaski county, who served the same on John W. Newman, the agent designated for service by the appellant.

The appellant is a foreign corporation, but authorized to do business under the laws of the state of Arkansas.

After service of summons in Pulaski county, a motion was filed to quash the summons and return of officer serving same, and upon this motion the trial court heard testimony and then overruled the motion to quash. Thereafter, the appellants sought relief by writ of prohibition. This was denied and appellant then filed answer pleading, however, that it was compelled to do so by the alleged erroneous action of the trial court, and pleading the lack of jurisdiction of the trial court in the cause. There was a verdict and consequent judgment in favor

of the appellee, whereupon the appellant, still reserving its rights, filed a motion for a new trial, and, that being overruled, appealed to the Supreme Court.

Several errors are alleged as having occurred in the progress of the trial. The view, however, that we have taken of this case is such that we think that it is not necessary to discuss these several alleged errors, as a determination of the question of proper service of summons results in a settlement, of the controversy. The appellant devotes a considerable portion of its brief to a discussion of the effect of § 1829 of Crawford & Moses' Digest. We think it may be stated, with fairness to the parties, that if § 1829 of Crawford & Moses' Digest is in full force and effect then the summons and the service thereof were proper, for the reason that this section permits a foreign corporation to be sued in any county of the state by obtaining due service of summons upon such corporation. However, domestic corporations and individuals could only be served in such counties as they are domiciled, or wherein they had an office or agent upon whom service could be had as provided by other statutes. This difference or discrimination as between foreign and domestic corporations was such that an attack was invited upon said § 1829 of Crawford & Moses' Digest as being in violation of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. In the case of *Power Mfg. Co.* v. *Saunders,* 274 U. S. 490, 47 S. Ct. 678, 71 L. Ed. 1165, it was held that said § 1829 was unconstitutional for the reason that there was discrimination against foreign corporations.

Appellants, in an extensive brief, argued that the appellee was insisting in the trial court that § 1829 was still effective against foreign corporations if not enforced or extended beyond the limits or conditions affecting domestic corporations. If the appellee made such contention in the lower court that contention has been abandoned upon this appeal, and such matter is not here presented, so this proposition will be disposed of by reference to the above citation of *Power Mfg. Co.* v. *Saunders.* This court has not attempted, at any time since the decision above cited, to uphold, so far as we are now advised, any

part of said § 1829, but it has recognized the full force and effect of the decision of the United States court in the Saunders case. *Chapman & Dewey Lbr. Co. v. Bryan,* 183 Ark. 119, 35 S. W. (2d) 80.

Appellee, however, says now upon this appeal that he relies upon § 1152 of Crawford & Moses' Digest, which is as follows:

"On corporate agent at branch office. Any and all foreign and domestic corporations who keep or maintain in any of the counties of this state a branch office or other place of business shall be subject to suits in any of the courts in any of said counties where said corporations so keeps or maintains such office or place of business, and service of summons or other process of law from any of the said courts held in said counties upon the agent, servant or employee in charge of said office or place of business shall be deemed good and sufficient service upon said corporations, and shall be sufficient to give jurisdiction to any of the courts of this state held in the counties where said service of summons or other process of law is had upon said agent, servant or employee of said corporations."

Appellee, however, says that he recognizes the said section as definitely fixing the venue in this proceeding, that is to say that the venue is fixed in any county where the corporation, whether domestic or foreign, is doing business and has an office, officer, or agent, and that under said section process may be served upon such agent or officer in the county. The appellee, however, does not contend that there was any service of summons upon any officer or agent of the appellant in Jackson county, but says that § 53 of act 255 of the Acts of 1907 (meaning probably Acts of 1931) provides for service upon a designated agent, and that the venue having been fixed by § 1152 proper service of process can be had by service upon either the officer or agent in the county of the venue or upon a designated agent wherever found in the state; that he is not required to serve process by delivering same to both the designated agent and to the officer or agent in the county where venue is fixed.

In support of appellee's contention we are also referred to act 255 of the Acts of 1931 as having application to domestic and foreign corporations. This is argued because art. 12, § 11 of the Constitution of 1874 provides:

"As to contracts made or business done in this State, they shall be subject to the same regulations, limitations and liabilities as like corporations of this State, and shall exercise no other or greater powers, privileges or franchises than may be exercised by like corporations of this State."

However, act 255 does not authorize service upon a foreign corporation to be made in a different manner from that upon a domestic corporation.

The argument of the appellee is to the effect that there are two methods whereby process may be served upon foreign corporations. One is by service upon the designated agent. The other is upon an officer or agent of the corporation, but such process, however, must be issued out of a suit filed in the county wherein the foreign corporation maintains an office, officer, or agent. Appellee concedes that he has not followed § 1152 in all its provisions in obtaining service. He has been governed by § 1152 to the extent only of a determination of the venue of the suit. It seems that he forgets that the conclusive proof of that venue would have been service in that county upon an officer or agent of the appellant. We do not mean to say that service upon one as an alleged officer or agent would have been conclusive of the fact that the person served was an officer or agent. That proposition may have been an issue of fact raised properly after service, but we do say in such case that if the proof established that the foreign corporation was doing business in the county, and that it had there an office with an officer or agent, quite a different issue would have been presented than what we now have.

Upon motion to quash, one witness was called, a Mr. Baum, who testified that he represented for a time Miller-Crenshaw Company, a wholesaler who handled or disposed of Anheuser-Busch products in six counties, including Jackson county; that the beer in controversy,

alleged to have been contaminated was beer sold by the Miller-Crenshaw Company; that from the date Miller-Crenshaw ceased to sell, D. Canale & Company began handling the Anheuser-Busch products in the same manner that they had been handled by Miller-Crenshaw prior to that time. He further testified that the Miller-Crenshaw Company and the D. Canale Company were each confined to a limited territory with six counties, Jackson being the only one named; that the Anheuser-Busch Company did not sell its products to any other dealer for distribution in these counties; that these distributors would not sell or deliver in any other counties; that the distributors, Miller-Crenshaw Company and D. Canale Company, bought beer f. o. b. the brewery in St. Louis; that the beer was shipped by both trucks and railroad; that it was not sold by these distributors for the account of the brewery; that upon shipment, f. o. b. St. Louis, that the beer became the property of the distributor; that it sold to whatever retail dealer it pleased, and under such conditions as suited the distributor. There is no evidence that the distributor made any report of how the sale was handled, to whom the beer was sold, whether for cash or credit, or whether the distributor collected therefor. The distributor, however, in all events was bound to pay within thirty days if it did not pay cash at the time of delivery to it. It is argued by appellee that these facts constituted Miller-Crenshaw Company and D. Canale & Company agents for the brewery, although it is established beyond question or dispute that the brewery did not maintain any place of business, and did not have any officer in Jackson county; that it had no agent unless Miller-Crenshaw Company and D. Canale Company were agents. Baum testified further that Miller-Crenshaw Company had its own places of business; that in these places it stored beer, and it probably delivered from these storage places as necessity required.

Appellee argues that the beer was stored for the appellant. The evidence, as abstracted by appellant, does not disclose this fact, and the appellee has not suggested any error in appellant's abstract. Baum's statement of facts clearly disclosed a proposition of sale and

purchase. It is a matter of common knowledge, or every day information, that many classes of goods are handled by dealers who buy from the manufacturers or producers and sell to the trade, and such dealers are in common parlance, or "street talk" designated as agents. Perhaps only one or two so-called agents may exist in a community, the number being determined by the population of the trade community to be served. The automobile industry is a striking example of this fact. In every city of the state so-called agents represent or sell products of manufacturers, and a dealer for one manufacturer would probably be unable to purchase machines produced and sold by a competitor. The same method is followed in the sale and distribution of many classes of farm machinery. Perhaps this same commercial custom is pursued by dealers in clothing and many other products. Yet we are unable to find from authority that such dealers are treated as agents upon whom service of process may be had.

In law, agency has a certain or definite meaning, and when such terms as agent or agency are found in a statute, ordinarily this legal significance must be implied. Section 1152, Crawford & Moses' Digest is not an exception.

In order not to extend unduly this opinion quotations from authorities will not be set out. The following cases, however, support the foregoing statements: *Cannon Mfg. Co.* v. *Cudahy Packing Co.,* 267 U. S. 333, 45 S. Ct. 250, 69 L. Ed. 634; *Consolidated Textile Corp.* v. *Gregory,* 289 U. S. 85, 53 S. Ct. 529, 77 L. Ed. 1047; *Crenshaw.* v. *State of Arkansas,* 227 U. S. 389, 33 S. Ct. 294, 57 L. Ed. 565; *Rogers* v. *State of Arkansas,* 227 U. S. 401, 33 S. Ct. 298, 57 L. Ed. 569; *Peoples Tobacco Co.* v. *American Tobacco Co.,* 246 U. S. 79, 38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C 537; *Standard Fashion Co.* v. *Magrane-Houston Co.,* 258 U. S. 346, 42 S. Ct. 360, 66 L. Ed. 658; *Watson* v. *Oregon Moline Power Co.,* 113 Wash. 110, 193 Pac. 222; *Barnes* v. *Maxwell Motor Sales Corp.,* 172 Ky. 409, 189 S. W. 444, Ann. Cas. 1917E 578; *Ford Motor Company* v. *Hall Auto Co.,* 226 Ala. 385, 147 So. 603; *Douglas* v. *Frigidaire Sales Co.,* 173 S. C. 66, 174

S. E. 906; *Harrell* v. *Peters Cartridge Co.*, 36 Okla. 684, 129 Pac. 872, 44 L. R. A. (N. S.) 1094; *Shores-Mueller Co.* v. *Palmer*, 141 Ark. 64, 216 S. W. 295; *Robertson* v. *Southwestern Co.*, 136 Ark. 417, 206 S. W. 755; *Coblentz & Logsdon* v. *L. D. Powell Co.*, 148 Ark. 151, 229 S. W. 25; *Sillin* v. *Hessig-Ellis Drug Co.*, 181 Ark. 386, 26 S. W. (2d) 122; *Equitable Credit Co.* v. *Rogers*, 175 Ark. 205, 299 S. W. 747.

Dozens of other cases to the same effect could be cited. We cannot conceive that any higher court would hold otherwise.

Appellee argues that appellant is authorized to do business in Arkansas, and that its only business is such as was conducted in Jackson county. No evidence is abstracted to that effect, but even if it be assumed that the statement is true it is not proof that appellant maintained in said county an office, officer or agent.

In fact no such inference can arise from the record before us.

It, therefore, follows there was no proper service of process. Appellant protected itself at every step in the progress of the trial by reserving its rights and proceeding only as required.

There was, therefore, no entry of appearance, unless we follow the highly technical, though contradictory rule announced in the following cases: *Duncan Lbr. Co.* v. *Blalock*, 171 Ark. 397, 284 S. W. 15; *Beal-Doyle Dry Goods Co.* v. *Odd Fellows Bldg. Co.*, 109 Ark. 77, 158 S. W. 955; *Metzger* v. *Mann*, 183 Ark. 40, 34 S. W. 1069; *Order of Ry. Conductors* v. *Bandy*, 177 Ark. 694, 8 S. W. (2d) 448; *Walker* v. *Walker*, 147 Ark. 376, 227 S. W. 762; *Lingo* v. *Swicord*, 150 Ark. 384, 234 S. W. 264.

By that rule one who has successfully defended his position and has established the fact by appeal that the effort to capture him was wrongful is told that because he struggled to avoid capture he must now surrender. Though he prove the trial court had no jurisdiction of his person, he is remanded to the processes of that court on account of the very fact that he has established the wrongful exercise of those processes. A theory so tech-

nical, so inconsistent and anomalous should have no place in modern law.

We have heretofore given notice that that matter of procedure was under re-examination as indicative of our purpose to announce a sounder principle. See *Chapman-Dewey Lbr. Co.* v. *Means,* 191 Ark. 1066, 88 S. W. (2d) 829; *Robinson* v. *Means,* 192 Ark. 816, 95 S. W. (2d) 98; *Safeway Cab & Storage Co.* v. *Kincannon,* 192 Ark. 1019, 96 S. W. (2d) 7.

There is no rule of property involved, there is no vested right in any rule of procedure held by any litigant.

We, therefore, hold appellant has not by appeal entered its appearance, and we overrule that part of the opinions in cases above cited as so holding that an appeal enters appearance.

It follows that judgment appealed from is erroneous and it is reversed, and the cause is remanded with directions to the trial court to sustain the motion to quash service of summons.