## THE FIRESTONE TIRE & RUBBER CO. et al. v. MARLBORO COTTON MILLS.

(Circuit Court of Appeals, Fourth Circuit. July 5, 1922.)

No. 1970.

1. Courts ⬅️508(3)—Federal court may restrain enforcement of void final judgment of state court.

A corporation against whom a void final judgment has been obtained in a state court may, where the necessary jurisdictional facts exist, have the enforcement of such judgment restrained in the federal court.

2. Courts ⬅️508(3)—Federal court may restrain the taking of one corporation's property in satisfaction of judgment of state court against other corporation.

Both a corporation whose property is sought to be taken on the mistaken theory that a final judgment has been obtained against it in a state court and a corporation whose property is sought to be taken by reason of its relationship to another corporation against whom a judgment was obtained in a state court may, where jurisdictional facts exist, obtain the aid of a federal court to restrain and enjoin, in a proper case, the taking of its property in satisfaction of such a judgment.

3. Courts ⬅️508(3)—Federal court had jurisdiction to restrain collection of judgment of state court, though complainants could petition in state court to have judgment set aside.

Where the federal court, by reason of diversity of citizenship and the amount involved, had jurisdiction of an action to restrain enforcement of final judgment fraudulently or unlawfully obtained in a state court, it was error to deny complainants relief on the ground that complainants had a right to petition in the state court to have the judgment set aside, since complainants were not confined to such remedy, but were entitled to seek relief by bill in equity in the federal court, notwithstanding Judicial Code, § 265 (Comp. St. § 1242).

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Suit by The Firestone Tire & Rubber Company, a corporation of Ohio, and another against the Marlboro Cotton Mills. From an order denying defendant's motion to dismiss the bill, and plaintiffs' motion for temporary injunction (278 Fed. 816), complainants appeal. Reversed in part.

Amos C. Miller, of Chicago, Ill., and D. W. Robinson, of Columbia, S. C. (Tillett & Guthrie, of Charlotte, N. C., on the brief), for appellants.

D. D. McColl, of Bennettsville, S. C. (W. M. Stevenson, of Bennettsville, S. C., on the brief), for appellee.

Before KNAPP and WADDILL, Circuit Judges, and GRONER, District Judge.

GRONER, District Judge. This is an appeal from the District Court for the Eastern District of South Carolina, at Charleston.

The Firestone Tire & Rubber Company, one of the complainants, is a corporation of the state of Ohio, with its principal office at Akron, in that state, where it is engaged in the manufacture of automobile tires and accessories. It will be referred to as the Ohio company.

Firestone Tire & Rubber Company, the other complainant, is a corporation of the state of West Virginia, and is wholly engaged in the business of selling automobile tires and accessories and does no manufacturing. A large majority of its stock is owned by the Ohio corporation. It will be referred to as the West Virginia company. The only difference in the corporate name of the two companies is that in the case of the Ohio company it begins with the word "The," which is absent in the case of the other. Marlboro Cotton Mills, the defendant, is a corporation of the state of South Carolina, and will be referred to as the South Carolina company.

The Ohio company, so far as now appears, has never conducted business in South Carolina, and has no office or agent in that state. The West Virginia company maintains branch offices through the Southern States, but none in South Carolina; its business in that state being confined to soliciting orders through agents whom it sends into that state from one of its branch agencies in Georgia or North Carolina.

In November, 1919, the Ohio company entered into a contract with the South Carolina company for the purchase from the latter of 160,000 pounds of cord fabric, to be delivered one-fourth in each of the months of March, April, May, and June, 1920. During these months, it is alleged, the South Carolina company delivered to the Ohio company approximately 67,000 pounds of fabric, and was in default as to the balance. In July, 1920, the Ohio company, the bill charges, electing to consider the contract as still in effect, though not fully performed, notified the South Carolina company that it would accept the fabric then undelivered under the contract at a later date, but that until otherwise notified no immediate deliveries should be made, and that this extension and modification was agreed to and acquiesced in by defendant.

Another contract was made about the same time, between the same parties, for 124,000 pounds of other fabric, all of which, the bill alleges, was delivered, accepted, and paid for.

In the month of December, 1920, there appears to have been a further exchange of letters between the Ohio company and the South Carolina company, and perhaps a personal interview between the respective heads of those companies; but it is charged in the bill of complaint, and not denied in any of the pleadings now before us, that the arrangement for the extension of time for the completion of the contract first mentioned above, was left undisturbed, but with the understanding that deliveries thereunder were to be subsequently arranged to commence at some mutually satisfactory later date.

Notwithstanding the agreement thus charged to have been made, the South Carolina company, on August 11, 1921, instituted in the court of common pleas of Marlboro county, S. C., an action at law against "Firestone Tire & Rubber Company," charging breach of both contracts and damages accruing thereby, amounting to $121,492.05, and in the complaint filed in this action described the defendant as "a corporation organized and chartered under and according to the laws of one of the states of the American Union." Service of process

in this action was had by delivering a copy of the summons, on August 13th, to one C. T. Ernest, a traveling salesman of the West Virginia company, who was then temporarily in Bennettsville, S. C., and within the jurisdiction of the court in which the action was pending. He, in turn, forwarded the summons to the branch office of the West Virginia company at Charlotte, N. C., where it was received by one Padgett, a clerk in the employ of that company. Padgett, knowing of no controversy between the West Virginia company and the South Carolina company, and believing that the summons had been illegally served because Ernest, from his point of view, was not the kind of an agent upon whom service could be legally had, failed to bring the action to the attention of the officer in charge of the agency, as a result of which no responsible officer of either the West Virginia company or the Ohio company had any knowledge of the pendency of the action in the South Carolina court, and at the ensuing October term a default judgment was had for $121,492.05 and costs. At some later date of the same term of court supplementary proceedings, under the practice in effect in South Carolina, were begun to have the accounts due the West Virginia Company in South Carolina placed in the hands of a receiver, and by other appropriate proceedings to enforce collection of the judgment. Being thus advised, for the first time, of the judgment and of the proceedings to enforce collection of it, the Ohio company and the West Virginia company filed in the United States District Court at Charleston a bill in equity praying that an injunction might issue to restrain the South Carolina company from enforcing the default judgment against complainants or either of them. On the filing of this bill a temporary restraining order was entered, but at a later date, upon the hearing on bill, affidavits, and exhibits, and motion to dismiss filed by defendant, the South Carolina company, an injunction pendente lite was refused.

The first question which we have to decide on this appeal is: Against which of the two Firestone Companies was the default judgment had? The lower court seems to have been in doubt, and not to have determined this question definitely, characterizing the whole proceeding in the state court as one of mingled confusion and uncertainty. A similar doubt appears to exist in the minds of counsel who obtained the judgment, for in the argument in this court they declined to commit themselves as to which corporation they had obtained the judgment against, and, when pressed for an answer to this query, contented themselves with the statement that the judgment was against both corporations—apparently upon the theory that identity of interest made each liable for the default of the other.

We find, however, no real difficulty on this branch of the subject. The contract upon which the suit was brought in the South Carolina court was between the Ohio company and the South Carolina company. No contractual relation, of any character, at any time ever existed between the West Virginia company and the South Carolina company. The summons, it is true, was directed to "Firestone Tire & Rubber Company, a corporation." The return of service and the complaint were likewise so entitled; but it is equally true that counsel for

the South Carolina company, claiming the right of amendment of the pleadings before the appearance of the defendant, changed the name of the defendant in each instance so as to designate the real defendant against whom the suit was directed, by inserting the word "The" before the name of the defendant, and the pleadings in this shape were the only pleadings before the court when the judgment was obtained.

In the trial had before the South Carolina court the evidence given in behalf of the plaintiff identified, with complete certainty, the Ohio company as the real defendant, and further identification was had by the introduction of the contract between those two companies as the basis of the action. The two issues submitted to the jury, and answered "Yes," were, first, whether Ernest was an agent of the Ohio company; and, secondly, whether the Ohio company was doing business in South Carolina on the date of the institution of the suit; and the judgment of the court was that the plaintiff recover of the defendant *"The* Firestone Tire & Rubber Company" the amount sued for. The "confusion and uncertainty," spoken of by the lower court in its opinion as applicable to the proceedings, grow wholly, first, out of the changes made in the pleadings; and, secondly, out of the efforts to impose upon the West Virginia company the liability claimed against the Ohio company by virtue alone of the stock control by the latter of the former. It follows, therefore, that upon the record now before us we have to decide whether a corporation against whom a void final judgment has been obtained may, where the necessary jurisdictional facts exist, have the enforcement of the same restrained, and also whether another corporation, whose property is sought to be taken either upon the mistaken theory that a final judgment has been obtained against it, or that by reason of its relationship to another corporation against whom the judgment was obtained, may, where jurisdictional facts exist, obtain the aid of a federal court to restrain and enjoin, in a proper case, persons so acting from taking its property in satisfaction of such judgment.

[1-3] We think both questions should be answered in the affirmative. This was also the conclusion at which the lower court arrived, and its refusal to exercise the authority was solely upon the ground that the state court wherein the judgment was obtained might, at any time within a year from the recovery of the judgment, or, where the judgment was attacked on equitable grounds, at any time after a year, grant complete relief. This, we think, was error, for, even though it be conceded that complainants, or either or both of them, might have appeared by petition in the court in which the judgment was obtained and applied to have the judgment set aside upon grounds similar to those contained in the bill filed in the federal court, they were not confined to this relief alone. The necessary diversity of citizenship, and the amount involved, gave them their right to ask relief in the proper federal court, and a federal court, in the exercise of its equity power, may, and should in a proper case, enjoin the collection of a judgment fraudulently or unlawfully obtained in a state court.

In this case the judgment was final. Every step necessary to make it an ended cause, so far as the judgment itself was concerned, had

been had, and the supplementary proceeding in process when the bill below was filed was, for all practical purposes, a new proceeding to realize on the judgment, analogous, in many respects, to a bill in equity to subject real estate to the payment of a judgment obtained in a common law action. The proceeding instituted in the federal court was not designed to correct errors appearing in the trial of the case in which the judgment was had, nor had it any of the aspects or purposes of a writ of error or an appeal. It was a proceeding by bill in equity to restrain the collection of a final judgment for lack of proper service, and it was therefore, under the circumstances here shown to exist, properly brought in the federal court (Barrow v. Hunton, 99 U. S. 80–82, 25 L. Ed. 407; Lehman v. Graham, 135 Fed. 39, 67 C. C. A. 513; Public Service Co. v. Corboy, 250 U. S. 153, 39 Sup. Ct. 440, 63 L. Ed. 905), and was unlike Essanay Film Co. v. Kane, 258 U. S. ——, 42 Sup. Ct. 318, 66 L. Ed. ——, decided by the Supreme Court April 10, 1922, where the action in the state court had extended only to the point where an interlocutory judgment had been obtained in default of appearance, and which only could be made final upon further proceedings through an assessment of damages. If the bill in this case had been filed after the default for nonappearance, but before issue was made and the jury impaneled to ascertain the damages, it would have been properly dismissed; but in the instant case that station had passed when the bill was filed. The inquiry to ascertain the amount to which the plaintiff was entitled had been had, and the final judgment on the same had been entered.

The case, therefore, is like that of Simon v. Southern Railway, 236 U. S. 115, 35 Sup. Ct. 255, 59 L. Ed. 492, which was a case in which Simon sued the Southern Railway Company, a Virginia corporation, in a state court of Louisiana, and served process on the secretary of state. No notice of the action was given the railway company, and it had no knowledge of the fact that the suit had been brought. It made no appearance, and judgment by default was entered and, under the Louisiana practice, the case admitted to a "trial by jury on confirmation of default." Witnesses were examined, and the jury returned a verdict in favor of the plaintiff, on which verdict judgment was duly entered. Subsequently the railway company, learning of the existence of the judgment, filed in the proper federal court a bill against Simon, asking that he be perpetually enjoined from enforcing the judgment. The bill, among other things, alleged that the Southern Railway was not doing business in Louisiana, and that service upon the secretary, or assistant secretary, of state, was not a citation to the railway company, and was null and void for the purpose of bringing it under the jurisdiction of the state court. The Supreme Court there held that, the necessary jurisdictional facts of diversity of citizenship, etc., appearing, federal courts, by virtue of their general equity power, had jurisdiction to enjoin plaintiff from enforcing the judgment, and that this jurisdiction could be invoked, either upon the ground that the judgment was obtained by fraud or that it was obtained without notice; that is to say, without the proper service of process. In answer to the contention made there, as here, that

section 265 of the Judicial Code (formerly section 720, R. S. [Comp. St. § 1242]) acted to prevent the assumption of jurisdiction by the federal court, the Supreme Court said:

"In 1793, when that statute was adopted (1 Stat. 334), courts of equity had a well-recognized power to issue writs of injunction to stay proceedings pending in court—in order to avoid a multiplicity of suits, to enable the defendant to avail himself of equitable defenses and the like. It was also true that the courts of equity of one state or country could enjoin its own citizens from prosecuting suits in another state or country. Cole v. Cunningham, 133 U. S. 107. This, of course, often gave rise to irritating controversies between the courts themselves which could, and sometimes did, issue contradictory injunctions. * * * But when the litigation has ended and a final judgment has been obtained—and when the plaintiff endeavors to use such judgment—a new state of facts, not within the language of the statute may arise"

—a state of facts making it the duty of the court to enjoin "that which purports to be a judgment but is, in fact, an absolute nullity." To the same effect, see, also, Wells Fargo v. Taylor, 254 U. S. 175, 41 Sup. Ct. 93, 65 L. Ed. 205.

Having due regard to these well-recognized principles, and in view of the facts as they now appear in the record before us, we are of opinion that the action of the District Court in refusing to dismiss the bill was right, and should be affirmed, but that its refusal to grant the temporary injunction was error. The order appealed from will therefore be reversed, with instructions to grant a temporary injunction until a final hearing shall determine, after full evidence, whether the judgment was obtained without service of process, or through fraud, accident, or mistake.

Reversed in part.