[No. 23431. Department One. December 23, 1931.]

THE STATE OF WASHINGTON, *on the Relation of Kerr Glass Manufacturing Corporation, Plaintiff,* v. THE SUPERIOR COURT FOR KING COUNTY *et al., Respondents.*[1]

*W. S. Nash, Clark & Clark,* and *Tanner & Garvin,* for relator.

*Henry, Henry & Pierce,* for respondents.

HERMAN, J.—This matter is before us on an alternative writ of prohibition commanding Honorable Wm. J. Steinert, judge of the superior court, to refrain from entering a proposed order denying a motion to quash service of summons upon the defendant in the case entitled "Mr. and Mrs. John G. White, et al., Plaintiffs, v. Kerr Glass Manufacturing Company, Defendant." We shall refer to that defendant as the relator herein.

Relator is a Nevada corporation, manufacturing fruit jars and caps, having its factory and principal office at Sand Springs, Oklahoma. It is not qualified

[1] Reported in 6 P. (2d) 368.

to do business in this state, and maintains no office, factory, warehouse or other establishment in Washington. It is not listed in any city directory or telephone book.

A. J. Huch, an employee of the relator, makes his home in the state of Washington, and represents relator in western Washington, British Columbia, Alberta, Saskatchewan and part of Manitoba, Canada. Huch agrees with relator in its contention that he is not relator's agent. He secures, but does not accept, orders for relator's products from prospective purchasers, principally wholesalers and some chain stores, such orders being subject to approval and final acceptance by relator at its home office in Oklahoma. All prices are fixed f. o. b. Oklahoma. Relator completes delivery when the products are turned over to the transportation company in Oklahoma. Bills of lading, invoices and statements are sent from relator direct to the buyer. Remittances are made direct from buyer to seller. Huch makes no collections, and has nothing to do with extending credit.

Huch also calls on retailers, to whom he does not sell, and encourages the use of relator's products. Certain seasons, relator sends men into the territory to help Huch in cultivating retailers. They create demands for relator's products, and pass orders along to the wholesaler designated by the retailer. These men are hired in Oklahoma, are paid from there, and report to the home office. Huch gets a copy of their reports, and directs their efforts while here.

Huch reports daily to Oklahoma, and is paid from there. Relator keeps no bank account in this state.

Sometimes relator, in order to secure carload rates for the buyer, completes a carload with merchandise not yet actually ordered, and this is placed in a warehouse and sold, subject to confirmation of the sales by

the home office. At the time this matter was pending before the lower court, relator had such merchandise in storage in this state. Some of the goods had then been in the warehouse for three months. Sometimes the goods are kept in a warehouse in this state for more than three months. Such excess shipments are received in this state approximately two or three times a year. When goods are sold from such stored excess shipments, a requisition upon the warehouseman is filled out and pinned to the order, which is sent to the home office for approval.

The principal question before us is whether or not, under these circumstances, relator is doing business in the state of Washington.

In *Smith & Co. v. Dickinson,* 81 Wash. 465, 142 Pac. 1133, this court held that, where it appeared an agent of a manufacturing concern kept samples for exhibition while soliciting orders, subject to the approval of the home office of his employer in another state, and had on two or three occasions, where sales thus made to customers to whom the goods upon receipt were not satisfactory, made resales of those goods, and on one occasion, when certain lines of goods he was exhibiting had been exhausted, sold the samples of that stock, such transactions were only incidental to the regular business of the corporation, and were subject to the approval of the corporation. In that case, this court held that the corporation was doing interstate business, and that the trial court correctly held that the respondent was not doing business in the state of Washington.

In the case before us, relator kept some goods in storage in the state of Washington for purposes of sale, keeping them for long periods as often as two or three times a year. It is true, relator did not at all times keep goods in this state for purposes of sale,

as was the situation in the case of *Grams v. Idaho National Harvester Co.*, 105 Wash. 602, 178 Pac. 815, where it was held that the corporation there concerned was doing business in this state. It is likewise true that such goods were disposed of, like all other goods handled by Huch, by securing offers to buy, which did not constitute sales until accepted by the home office. Requisitions upon the warehouse for the goods in storage were attached to the order blanks and sent back to the office in Oklahoma.

However, we think it can be fairly said that Huch's course of conduct, taken into consideration with the disposal of the goods shipped into this state before they were sold and held here, under the protection of the state government, awaiting sale, made manifest the presence of relator in this state. We think the conduct of Huch, in connection with that of the relator, constituted a course of business, and not a series of isolated transactions.

The case is similar in principle to the case of *International Harvester Co. of America v. Kentucky*, 234 U. S. 579, wherein it was said:

"True, it has been held time and again that a State cannot burden interstate commerce or pass laws which amount to the regulation of such commerce; but this is a long way from holding that the ordinary process of the courts may not reach corporations carrying on business within the State which is wholly of an interstate commerce character. . . .

"We are satisfied that the presence of a corporation within a State necessary to the service of process is shown when it appears that the corporation is there carrying on business in such sense as to manifest its presence within the State, although the business transacted may be entirely interstate in its character."

It appearing that relator was doing business within this state, and the showing persuading us that A. J.

Huch, who was served with process as the agent of relator, exercised such authority with reference to the business of relator in this state as to constitute him an agent of relator amenable to process, the alternative writ issued out of this court will be quashed.

TOLMAN, C. J., MITCHELL, PARKER, and BEELER, JJ., concur.