## MAS v. ORANGE–CRUSH CO.
### No. 4383.

Circuit Court of Appeals, Fourth Circuit.
Nov. 10, 1938.

**676**

George E. Allen, of Richmond, Va., for appellant.

Murray M. McGuire and Peter Otey Miller, both of Richmond, Va. (McGuire, Riely, Eggleston & Bocock, of Richmond, Va., on the brief), for appellee.

Before NORTHCOTT and SOPER, Circuit Judges, and WEBB, District Judge.

SOPER, Circuit Judge.

The plaintiff in the District Court, who sued for an accounting of profits arising from the use of an ornamental design for bottles by Orange-Crush Company, appealed from a judgment whereby the service of process upon the defendant by the United States marshal was quashed and the bill of complaint was dismissed. The return of the marshal showed that process was served upon "J. L. Cummings, in person, who is an agent of such corporation, and who resides in said City of Richmond, Virginia, a place within my District". The defendant appeared specially to question the jurisdiction of the court and moved to quash the service of process, to vacate the return and to dismiss the bill on the ground that it is a foreign corporation not doing business in Virginia, and that Cummings was not such an agent as to warrant service of process upon him.

Evidence was taken at the hearing which established in substance the following facts: The Orange-Crush Company is an Illinois corporation with its principal place of business at Chicago. It has no place of business in Virginia. It manufactures a syrup for making a beverage known as Orange-Crush and has licensed several concerns to make and bottle the beverage for sale in Virginia. For a period of years prior to November, 1932 it shipped the syrup from California, where it was made, to the Jones Cold Storage Company in Norfolk, Virginia, where it was stored as a stock of goods for distribution to the licensees. The storage bills were paid by the Illinois corporation. The Storage Company was furnished with a list of the licensees and received orders from them for the goods as required, usually accompanied by a remittance to cover the purchase price. Upon receipt of an order, the Storage Company issued a triplicate bill of lading, retaining one copy, sending one copy to the purchaser and one copy to the corporation in Chicago, with the remittance attached.

In 1932 the Illinois corporation was advised that its operations in Virginia amounted to a doing of business in that state and that it was required by law to qualify for the purpose, unless it should create a subsidiary corporation to handle the business. Desiring to avoid the expense of qualifying in its own name, it organized a Virginia corporation under the name of Orange-Crush Incorporated, with an authorized capital of $10,000 and a paid in capital of $300, represented by shares owned by the defendant. The subsidiary Virginia corporation has a statutory agent for the service of process, but it has no officer or director and no place of business in the state. It has no bank account in Virginia or elsewhere. It is not listed in the telephone directory or city directory in Chicago, and has no office there with its name on the door. The officers and directors of the subsidiary are the same as those of the parent, and the subsidiary has no employee who is not at the same time an employee of the parent. The books of account of the subsidiary and those of the parent company are kept by the same persons in the City of Chicago.

The business of distributing the syrup in Virginia has been conducted in the same way since the formation of the subsidiary as before, except in the following particulars: The Storage Company holds the goods stored in its warehouse in the name of the subsidiary; the bills of lading for the goods distributed are made out in its name; the remittances when received in

Chicago are deposited in the bank account of the parent company and credited to the subsidiary on its books at the end of each month; the amounts expended by the parent company for the cost of the syrup, transportation, bookkeeping, etc., pertaining to the business done in Virginia are debited on the books of the subsidiary at the end of each month; and there is also charged to the subsidiary at periodic intervals a part of the salaries of the employees engaged upon the Virginia business proportioned to the amount of that business. Since the parent company handles all the money from the Virginia business, the books nearly always show that the parent is indebted to the subsidiary. The gross business done in Virginia amounts to $75,000 or $80,000 a year and the profits of the business go to the parent company. Presumably the profits are distributed in the form of dividends; but the record shows only that "the Virginia Company has declared a dividend". A report of that company to the State Corporation Commissioner of Virginia shows that an annual meeting of stockholders and an election of officers were held in February 1937.

J. L. Cummings, upon whom process was served, has been district sales representative of the defendant for many years and he has also been sales representative of the Virginia subsidiary since its formation. He is a resident of Virginia but has no office in said state. He visits the bottlers licensed by the defendant for the purpose of advising them with regard to proper and efficient methods of bottling, merchandising, and advertising Orange-Crush and other products marketed by the defendant, and he procures samples and sends them to Chicago for analysis to ascertain whether the finished product of the bottlers' conforms to the formula prescribed in the license contracts. He has authority to conduct preliminary negotiations with prospective licensees, but all contracts of license emanate from Chicago. It is his duty to report violations of license contracts which, if cancelled, are cancelled in Chicago. Occasionally he accepts orders for fruit syrups but he is not expressly authorized to do so and takes orders only for the convenience of customers. His orders during the nine months preceding the hearing amounted to less than 3% of all the products sold in Virginia during that period. His salary is paid by the parent company but a part of it, proportionate to the Virginia business, is charged to the subsidiary.

The District Court held upon the authority of Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634, that the activities described constituted the transaction of business by the subsidiary but not by the parent company and therefore quashed the service upon it. The differences between the subsidiary in that case and in this, both in its capacity for the transaction of business and in its actual performance thereof, seem to us significant. In Cannon Mfg. Co. v. Cudahy Packing Co. the subsidiary had a paid in capital of $100,000, owned property worth $557,000, had its own staff of employees, kept its own books, maintained its own offices, bought its supplies from the parent and sold them to dealers, and preserved its existence in all respects as a distinct corporate entity. Hence the court held that the business conducted in its name was its own and not that of the parent corporation, although the latter owned all of the stock of the former and dominated it completely. In contrast with this picture the existence of the Virginia corporation seems to have been manifested only in a set of books kept in the City of Chicago by the employees of the Illinois corporation for its convenience in order to record the activities of a department of its business. The Virginia corporation had no headquarters where it could be found for business purposes, no capital for the transaction of business in the territory assigned to it, no funds within its control and no opportunity for independent action in the management of its affairs. In our opinion it was a mere name without reality, a device to give the appearance of the transaction of an independent business which in fact was completely managed by the Illinois corporation. Hence we conclude that the activities carried on in Virginia were performed on behalf of the parent company and that in accordance with the current of authority, the formal existence of the subsidiary in this case may be ignored. Atlantic Greyhound Lines v. Metz, 4 Cir., 70 F.2d 166, certiorari denied 293 U.S. 562, 55 S.Ct. 73, 79 L.Ed. 662; Colonial Trust Co. v. Montello Brick Works, 3 Cir., 172 F. 310; Industrial Research Corp. v. General Motors Corp., D.C., 29 F.2d 623, noted in 42 Harvard Law Rev. 955; Murphy v. Campbell Soup Co., D.C., 40 F.2d 671.

678

The activities in Virginia, as we have seen, were carried on in large part by Jones Cold Storage Company which received and stored the goods shipped into the state by the parent company, filled the orders of the bottlers from the stock on hand, and collected the remittances. In addition the defendant corporation was represented in the state by Cummings, its resident agent, who maintained a certain supervision over the manufacture of beverages by the licensees and occasionally made sales of merchandise. It was held in International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, that a foreign corporation is doing business in a state when it maintains there soliciting agents who are empowered to procure orders for goods and to make collections. See, also, Certain-teed Products Corp. v. Wallinger, 4 Cir., 89 F.2d 427. And it has often been held that a foreign corporation which ships goods in bulk into another state and there holds them in a warehouse for use in filling orders is doing business in that state. Midland Linseed Products Co. v. Warren Bros. Co., 6 Cir., 46 F.2d 870; Liquid Veneer Corp. v. Smuckler, 9 Cir., 90 F.2d 196; United States v. Pacific Forwarding Co., D.C., 8 F.Supp. 647; State ex rel. Kerr Glass Mfg. Corp. v. Superior Court, 166 Wash. 41, 6 P.2d 368, certiorari denied 286 U.S. 532, 52 S.Ct. 640, 76 L.Ed. 1273.

It is also clear that J. L. Cummings was a representative of the defendant corporation of sufficient rank to justify the service of process upon him under the state law. Section 6064 of the Virginia Code provides that if a foreign corporation has no statutory agent in the state, process may be served "on any other agent". Under a similar statute it has been held that process may be served on an agent of a foreign corporation who merely solicits business without authority to make contracts or accept payments. Firestone Tire & Rubber Co. v. Marlboro Cotton Mills, D. C., 278 F. 816, modified on other grounds 4 Cir., 282 F. 811; Genack v. Gorman, 224 Mich. 79, 194 N.W. 575; State ex rel. Kerr Glass Mfg. Corp. v. Superior Court, 166 Wash. 41, 6 P.2d 368, certiorari denied 286 U.S. 532, 52 S.Ct. 640, 76 L.Ed. 1273; see, also, Atlantic Greyhound Lines v. Metz, 4 Cir., 70 F.2d 166, certiorari denied 293 U.S. 562, 55 S.Ct. 73, 79 L.Ed. 662; Certain-teed Products Corp. v. Wallinger, 4 Cir., 89 F.2d 427.

The decree of the District Court will be reversed and the case remanded for further proceedings.

Reversed and remanded.