[No. 27875. *En Banc.* July 12, 1941.]

BRANDTJEN & KLUGE, INC., *Respondent,* v. E. J. NANSON, *Appellant.*[1]

[1]Reported in 115 P. (2d) 731.

*Gleeson & Gleeson,* for appellant.

*Harrison M. Berkey,* for respondent.

ROBINSON, C. J.—The purpose of this action was to obtain a judgment for the balance due on a promissory note and the foreclosure of a chattel mortgage. The trial was before the court without a jury, and resulted in findings of fact from which it was concluded that the plaintiff was entitled to the relief which it sought. Judgment was entered against the defendant in the sum of $1,937.09, together with the further sum of twenty-five dollars attorneys' fees, and the foreclosure of the mortgage was directed. From this judgment, the defendant appealed.

The respondent was a corporation organized under the laws of the state of Minnesota, in which state it had its principal place of business, and was engaged in the manufacture of printing presses. It was not authorized to do business in this state. The appellant, E. J. Nanson, was engaged in the printing business in the city of Spokane, in this state.

September 16, 1937, the appellant contracted with one G. D. Fye, a salesman for the respondent, for the purchase of a printing press. By its terms, this contract provided that it should not be binding upon the respondent until its written acceptance should be endorsed thereon "by the home office." The contract was sent to the home office, and was there approved. After its approval, a note for the purchase price was drawn, and, also, a chattel mortgage securing the same. The

printing press was shipped to Spokane, and was consigned to the respondent itself in care of the appellant. Some days after it arrived in Spokane, a mechanic came to that city for the purpose of assembling the press and putting it in working order. He took delivery from the transportation company, and, in turn, delivered it to the appellant's place of business. Some payments were made upon the note, and this action was brought, as above indicated, to recover the balance and foreclose the chattel mortgage.

There are two questions presented upon the appeal, one of which is whether the corporate existence of the respondent was proven, and the other, whether it was doing business in this state. Upon the trial, there was introduced in evidence a copy of the articles of incorporation and an amendment thereto, certified by the secretary of state of the state of Minnesota. There was no other evidence on the question. The certified copy of the articles of incorporation was sufficient evidence of its corporate existence, in the absence of evidence to the contrary. *St. Anthony & Dakota Elevator Co. v. Turner,* 132 Wash. 419, 232 Pac. 288.

Whether the corporation was doing business in this state depends upon the attendant facts and circumstances of the case. In the case of *Smith & Co. v. Dickinson,* 81 Wash. 465, 142 Pac. 1133, where the facts and circumstances, except in two particulars which will be subsequently noticed, were more potent, as indicating doing business in this state, than are the facts and circumstances in the present case, it was held that the corporation was not doing business in this state. One of the facts which, it is contended, differentiates that case from this one is that, here, the printing press was shipped to the respondent itself in care of the appellant, while, in the case cited, the goods

for which recovery was sought were shipped direct to the purchaser in this state, to whom they had been sold by a salesman, as is the case now before us.

The appellant seeks to distinguish the case of *Smith & Co. v. Dickinson* by saying that, in that case, there was only proof of "isolated transactions" in this state. However, the opinion in that case shows on its face that the transactions of the plaintiff were no more isolated than were the transactions in this case. Whether a foreign corporation is doing business in this state does not depend upon the number of transactions that it has, but upon the nature and character of the transactions.

In the case of *Dalton Adding Machine Sales Co. v. Lindquist,* 137 Wash. 375, 242 Pac. 643, it was recognized that a foreign corporation engaged in the manufacture and sale of articles of commerce may send its soliciting agents into the state for the purpose of taking orders for its products and may ship them to one of its agents for delivery to the purchaser, and this does not constitute doing business. (See the long list of citations to this effect in 60 A. L. R. 1020-1022, incl.) If the shipment of the goods to the soliciting agent did not constitute doing business in this state, it would seem, necessarily, to follow that the respondent, in this case, was not doing business in the state by reason of the fact that it consigned the printing press to itself in the care of the purchaser.

In *Williams v. Golden & Crick,* 247 Pa. 397, 93 Atl. 505, a foreign corporation, which sold fixtures in Pennsylvania, consigned them to itself, and sent workmen to install them, was held not to be doing business therein.

It is further contended that the fact that a mechanic was sent into this state to assemble the press and put it in working order differentiates this case from the

*Smith & Co.* case. The agreement to assemble the press and put it in working order did not divest the sale of its character as interstate commerce and constitute doing business in this state. *General Talking Pictures Corp. v. Shea,* 185 Ark. 777, 49 S. W. (2d) 359; *North v. Mergenthaler Linotype Co.,* 77 S. W. (2d) (Tex. Civ. App.) 580; *York Mfg. Co. v. Colley,* 247 U. S. 21, 62 L. Ed. 963, 38 S. Ct. 430, 11 A. L. R. 611.

The cases of *Grams v. Idaho Nat. Harvester Co.,* 105 Wash. 602, 178 Pac. 815, and *State ex rel. Kerr Glass Mfg. Corp. v. Superior Court,* 166 Wash. 41, 6 P. (2d) 368, are obviously distinguishable. In the first of these cases, the decision is grounded upon the fact that the foreign corporation had on hand, in a warehouse, a large list of extras and repair parts of machines which were to be sold and accounted for as its property by the warehouse company. In the second case, the foreign corporation sent into this state excess shipments which remained in storage until sold and released on requisition upon the warehouse company, which requisitions accompanied orders approved at the home office.

The appellant appears to contend that the respondent was under obligation to service the press from time to time. But we find nothing in the contract to that effect. It is true that the salesman, and, also, the mechanic who assembled the press, on two or three different occasions when they happened to be in the city of Spokane, called at the appellant's place of business, looked over the press, and made some adjustment. A representative of the respondent expressly testified: "We don't service them; we install them and give them instruction." And further, that the service man only went into a state to service a press when instructed to do so. The incidental adjustment on the press by the salesman who took the order and

the mechanic who assembled it cannot be said to be doing business in this state. There are many cases which support this conclusion. See, for example, *Johnston v. Lamson Co.*, 159 Va. 666, 167 S. E. 417; *General Talking Pictures Corp. v. Shea*, 185 Ark. 777, 49 S. W. (2d) 359.

On April 5th shortly after the trial, the trial judge filed a memorandum opinion in which he stated that he was convinced that the appellant was not engaged in intrastate business, but went on to say:

"However, I feel that upon the trial of the action, I may have unduly restricted the defendant from showing a course of conduct on the part of plaintiff in other transactions of a similar nature and within a reasonable time, that might have established the fact that at the time of the transaction here in question the plaintiff was doing an intrastate business. I feel disposed, therefore, to give defendant an opportunity to assemble and submit any proof that it may be able to procure. I recall that defendant was attempting to procure this fact either upon cross examination of plaintiff's witnesses or upon his direct examination as an adverse witness. I recall there was only one of plaintiff's witnesses who was interrogated by defense counsel along this line. . . . As I view it, when a foreign corporation invokes the aid of the courts of this state, considerable latitude should be allowed in examination to show whether or not the foreign corporation is entitled to this assistance, either by compliance with our laws, or by bringing itself within the exemptions on account of exclusive intrastate business. I shall withhold final decision for one week to enable defendant's counsel to determine whether or not additional proof will be submitted."

It does not appear that the defendant submitted any additional proof, although it appears that the plaintiff's attorney stated in open court that the plaintiff had consummated a number of similar transactions, within

the state of Washington, similar to the one involved in this case, and in the same manner.

On June 20th, the trial judge rendered a second memorandum opinion, stating that he was impressed with the holding of the court in *Mergenthaler Linotype Co. v. Spokesman Pub. Co.*, 127 Ore. 196, 270 Pac. 519, concluding the opinion with the following statement:

"However, I think that counsel for defendant should have time to distinguish the Oregon case from the case at bar or to show that our court has held otherwise as to the effect of similar transactions. Ten days from the receipt of this opinion will be allowed defendant to present written brief of authorities if desired. Otherwise, judgment may be presented for the plaintiff."

On July 10th, the trial judge announced to both counsel his final determination in the matter, in the following words:

"I have read defendant's memorandum of June 30th in the above matter and it seems to me that the only question is whether or not our Court would follow the Mergenthaler Linotype Co. vs. Spokesman Review Publishing Co., referred to in a previous memorandum. I do not believe that the present case is distinguishable from that case, and while I do not agree with the principles therein laid down, I am convinced that the weight of authority is behind it."

It is thus not only apparent that the appellant was given every opportunity by the trial court to produce evidence in support of his claim that respondent was doing business within the state, but also that the question raised by appellant was given exceptionally patient and earnest consideration by the trial judge. In our opinion, his conclusion is supported by the great weight of authority.

The judgment is accordingly affirmed.

BEALS, STEINERT, MILLARD, SIMPSON, JEFFERS, and DRIVER, JJ., concur.

BLAKE, J. (dissenting)—I think it is established by the evidence that plaintiff is engaged in business in this state on an extensive scale, and that this controversy arose out of an intrastate transaction. Therefore, plaintiff, having failed to comply with the laws governing the rights of foreign corporations to engage in business in this state, is not entitled to maintain the action.

I dissent.

MAIN, J., concurs with BLAKE, J.

[1]Reported in 115 P. (2d) 702.