474 P.2d 444

STATE TAX COMMISSION of Arizona, the State of Arizona, William E. Stanford, as Chairman, John M. Hazelett and L. Waldo DeWitt, as Members of the State Tax Commission of Arizona, Appellants,

v.

The HOWARD P. FOLEY CO., and Jelco Incorporated d/b/a Foley-Jelco, a Joint Adventure, Appellees.

No. I CA–CIV 1153.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 9, 1970.

Rehearing Denied Oct. 15, 1970.

Review Denied Dec. 8, 1970.

Gary K. Nelson, Atty. Gen., by James D. Winter, Tucson, for appellants.

Brown, Vlassis & Bain, by Charles C. Bernstein and Geo. E. Hilty, Phoenix, for appellees.

JACOBSON, Acting Presiding Judge.

We are called upon to determine whether the activities of plaintiff within the State of Arizona constituted "contracting" and therefore were properly subject to the transaction privilege taxes of the state or whether these activities were an interstate sale and therefore protected from local taxation by the commerce clause of the U. S. Constitution.

Plaintiff-appellee, FOLEY-JELCO, is a joint venture comprised of two foreign corporations, HOWARD T. FOLEY CO., and JELCO, INCORPORATED. Plaintiff brought suit against the combined

taxing authorities of the State of Arizona hereinafter referred to as "defendant", for a refund of transaction privilege taxes and education excise taxes in the sum of $197,-944.71 paid by plaintiff under protest to the defendant. On cross motions for summary judgment, the trial court, Judge John E. Burke, presiding, held that the tax in question as applied to the transactions involved was in violation of the commerce clause of the Constitution of the United States and entered judgment for the plaintiff. Defendant appealed this judgment.

The facts are not in dispute. On May 10, 1961, plaintiff entered into a contract with Arizona Public Service Company entitled "Contract and Specifications for Construction of Phoenix-Four Corners 345 K V Transmission Lines." The contract itself described the purpose and scope of the project contemplated by the contract.

"*Scope of Project*

"Arizona Public Service Company is constructing a 350 MW coal fired steam-electric station in the Four Corners Area six miles southwest of Fruitland, New Mexico. To integrate this plant into the existing electric transmission system Arizona Public Service Company proposes to build a 345 kv transmission system.

" * * * [T]his system would consist of two single circuit lines (approximately 320 circuit miles) from the Four Corners Plant to the Cholla Power Plant (near Joseph City, Arizona) and one single circuit line (approximately 130 circuit miles) from the Cholla Power Plant to Pinnacle Peak Substation, a receiving substation in upper Paradise Valley.

"The line will be constructed of self supporting steel or aluminum towers with a 2 conductor bundle of 795 MCM ACSR. The overhead ground wires will be ⅜ H.S. Steel. The majority of the line will be single circuit towers with double circuit towers being utilized on the south end of the Pinnacle Peak-Cholla line.

"The substations and switchyards are not a part of this contract.

"This project is to be constructed by a major electrical contractor in accordance with these specifications and other contract documents.

"The Contractor will be responsible for the following:

"a. Purchasing storage and expediting of materials.

"b. Completion of engineering design in accordance with these specifications.

"c. Physical clearing of right-of-way including the disposal of merchantable timber.

"d. Obtaining of right-of-way for and/or the construction of access roads where needed by the Contractor.

"e. Provide the manpower, equipment and supervision required to adequately construct the line within the time required.

"The Company would be responsible for the following:

"a. Obtain the legal rights to the transmission line right-of-way.

"b. Do the basic line design as specified and covered by these specifications.

"c. Provide quality control inspection of the contract work."

Subsequent to the execution of the transmission line contract, plaintiff and Arizona Public Service entered into a second, separate agreement whereby plaintiff agreed to build the substation located at Pinnacle Peak, Arizona, under an instrument entitled "Contract and Specifications for Construction of Pinnacle Peak 345/230/69/KV Substation (switchyard)."

Plaintiff was formed by its two corporate adventurers for the specific purpose of entering into and performing these contracts with Arizona Public Service.

In connection with these contracts plaintiff was required to obtain specified materials such as towers, and wire and material

in the Pinnacle Peak Substation from out-of-state suppliers. Specifically, the steel towers upon which were hung the transmission lines were specially designed and fabricated outside the State of Arizona and were shipped to railheads in New Mexico and Arizona in a "knocked down" condition.

The parties agree that materials purchased in the State of Arizona comprised approximately 3.7% of the entire contract price, these materials being primarily used in the footings and foundations for the steel towers.

The entire project required approximately 21 months to complete. During this time plaintiff employed a work force of approximately 200 men in Arizona and established an office in Holbrook, Arizona which was staffed by seven people for over a year. Plaintiff in the execution of the transmission line contract constructed 292 miles of roads and engaged in all the necessary construction activities to install the power line from the northwest corner of New Mexico to Phoenix, Arizona, a distance of approximately 182 miles. It also built the structure and installed the necessary equipment for the substation. Plaintiff received a total consideration under the two contracts of $26,578,446.98 of which $22,914,029.99 was attributable to work performed in Arizona.

After making the deductions required by statute, defendant assessed a tax on plaintiff's gross income on the two contracts in the sum of $197,944.71. These assessments were made pursuant to A.R.S. 42–1309, 42–1310, subsec. 2, par. i and 42–1361 (levying taxes on the privilege of doing business in this state, specifically contracting).

The only question on appeal is whether or not the contracts and activities of plaintiff were a sale in interstate commerce and therefore not subject to taxation by the state or whether these contracts and activities required plaintiff to perform services which constituted contracting, a business which is intrastate in nature and therefore subject to the taxing power of this state.

We note initially that the facts in this case are not in dispute and that the trial court's "findings of fact", are in many respects conclusions of law. We therefore are not bound by them, but may draw our own legal conclusions from the admitted facts.[1] Combustion Engineering Inc. v. Arizona State Tax Commission, 91 Ariz. 253, 371 P.2d 879 (1962).

We also note that plaintiff's contention in this case rests on the premise that it sold the power transmission line and substation to Arizona Public Service in an interstate sale and its activities in Arizona were limited to installation of the system, thereby claiming the protection of the Commerce Clause of the United States Constitution. Defendant on the other hand bases its argument as to the existence of a constitutional taxing power on the theory that the installation of the transmission line and substation was not merely incidental to an interstate sale, but were activities amounting to the engaging in the business of contracting within the State of Arizona, an intrastate activity. From an analysis of the contracts in question and the applicable law we agree with the defendant's contention.

The taxing statutes involved here have been properly designated as a "tax on the privilege on the right to engage in business and not a * * * sales tax * * * [B]oth in practical and legal effect the tax is upon the person conducting a business and not upon the transaction, the sale." Arizona State Tax Commission v. Garrett Corporation, 79 Ariz. 389, 291 P.2d 208 (1955).

With this principle in mind, we turn to the contract between plaintiff and Arizona Public Service. First the parties to the contract themselves designate plaintiff as a "contractor". While such a designation is

---

1. Of course, if there had been raised any genuine issue as to any material fact then this matter could not have been disposed of by summary judgment.

not binding on this court and we will look to the substance of their contract, in this case we are of the opinion that this designation was correct. The plaintiff applied for and received from the Registrar of Contractors of the State of Arizona, a contractor's license in order to conduct the activities contemplated by it within the State of Arizona. Plaintiff by its contract with Arizona Public Service was required to post a 100% performance bond and a labor and material bond equal to 50% of the contract price. The contract further provided a per diem penalty clause. As is apparent from the quoted portion of the transmission line contract, plaintiff was required to *construct* a transmission line. The same can also be said concerning its obligation with respect to the substation.

In order to accomplish the purposes of the contracts, plaintiff was required to obtain custom designed material from out-of-state suppliers. Plaintiff, however, did not build or construct these custom-designed materials—they were sold to plaintiff by third persons. These materials were then shipped by the out-of-state suppliers to plaintiff in Arizona. As to these transactions between plaintiff and its out-of-state suppliers, there is no question that these *sales* were interstate in nature. Defendant has not in any manner attempted to tax these particular transactions. It is important to keep this fact in mind. Plaintiff did not construct, manufacture or build the component parts and then sell them to Arizona Public Service in an interstate sale as it contends. It purchased these component parts from third persons in interstate commerce in order to comply with the terms of its contract with Arizona Public Service to construct and build a transmission line and substation in Arizona. These component parts which were received from out-of-state suppliers and sold to plaintiff, were part of the materials necessary for plaintiff to use in its construction contract with Arizona Public Service. Plaintiff's contract with Arizona Public Service was not a sale of a transmission line and substation, but a contract to *construct* such facilities.

We thus do not have the situation that was present in Combustion Engineering Inc. v. Arizona State Tax Commission, *supra*, upon which plaintiff places so great a reliance. In *Combustion Engineering*, the aggrieved taxpayer was the designer and manufacturer of steam generating equipment for power plants. This manufacturer *sold* to Arizona Public Service two large boilers, by purchase orders. This sale required the manufacturer to supervise their installation in Arizona. The Supreme Court of Arizona was concerned primarily with whether or not the supervision of the installation of these steam boilers arising out of an admitted interstate sale constituted a "substantial part" of the performance of the whole contract. The *Combustion Engineering* case did not decide what the tax liability was of the contractor who did the actual installation work for the manufacturer, which is the position plaintiff occupies in the case presently before the court. Nor does *Combustion Engineering* hold that income derived from construction was not subject to taxation merely because the materials used in that construction were shipped in interstate commerce, which is what plaintiff would have us hold.

Plaintiff has not cited to us, nor has our independent research disclosed, any case where a contractor who obtained materials from out-of-state suppliers for use in an intrastate construction project, escaped state taxation because of the interstate character of the materials used. On the contrary, both federal and state courts have held that "when merchandise transported in interstate commerce has arrived at its destination and is held there for use or disposal, it passes under the protection of state law and becomes subject to the taxing and police power of the state." Custom Built Homes Co. v. Kansas State Commission of Revenue & Taxation, 184 Kan. 31, 334 P.2d 808 (1959). If the materials themselves lose their interstate character when used in the state, it is obvious the activity required in the state to place these materials in use would not be an interstate transaction. *See*

Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814 (1937); Western Gas Construction Company v. Virginia, 147 Va. 235, 136 S.E. 646 (1927), aff'd. 276 U.S. 597, 48 S.Ct. 319, 72 L.Ed. 723 (1928). *Compare* General Railway Signal Company v. Virginia, 246 U.S. 500, 38 S.Ct. 360, 62 L.Ed. 854 (1918), where the contractor was also the manufacturer.

Plaintiff in passing argues that since it is a joint venture comprised of two foreign corporations and that it performed only a single transaction within the state, such a transaction is not subject to state taxation. Plaintiff overlooks, however, that plaintiff's sole existence as a joint venture was to perform the single transaction. It had no other purpose. In such a case the "single transaction" rule does not apply. Hoffstater v. Jewell, 33 Idaho 439, 196 P. 194 (1921). State ex rel. Guernsey-Newton Co. v. Superior Court, 136 Wash. 653, 241 P. 303 (1925); Brandtjen and Kluge, Inc. v. Nanson, 9 Wash.2d 362, 115 P.2d 731 (1941).

We therefore hold that where an entity is formed for the specific purpose of performing a construction contract within the State of Arizona which contract by its very nature is intrastate in character, it may not escape taxation merely because the materials used in the performance of that contract were obtained in interstate commerce or that it had engaged in only carrying out one transaction within the State of Arizona.

The judgment of the trial court is reversed and the matter remanded with directions to enter judgment in favor of the defendant taxing authorities of the State of Arizona.

HAIRE, J., and HAROLD D. MARTIN, Judge of the Superior Court, concur.

*Note*: Judge WILLIAM E. EUBANK, having requested that he be relieved from consideration of this matter, Judge HAROLD D. MARTIN was called to sit in his stead and participate in the determination of this decision.