NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JEREMY V., *Appellant*,

*v.*

JUDITH H., K.V., *Appellees*.

No. 1 CA-JV 14-0274
FILED 6-18-2015

Appeal from the Superior Court in Maricopa County
No. JS506983
The Honorable Janice K. Crawford, Judge

**VACATED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Ellsworth Family Law, P.C., Mesa
By Glenn D. Halterman
*Counsel for Appellees*

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge John C. Gemmill and Judge Donn Kessler joined.

**J O N E S**, Judge:

¶1        Jeremy V. (Father) appeals from the juvenile court's order severing his parental rights to K.V. (Child) following a private severance petition filed by Judith H. (Mother).[1]  For the following reasons, we vacate the severance order.

## FACTS[2] AND PROCEDURAL HISTORY

¶2        Father and Mother are the biological parents of Child, born in 2005.  Father and Mother divorced in January 2009, and Mother was granted sole legal decision-making authority and primary physical custody of Child.  Father was awarded regular parenting time and ordered to pay child support.  Father paid child support until he was laid off in March 2009 and could no longer make the support payments.  That same month, the family court accepted a stipulation to increase Father's parenting time and reduce his child support to zero.  Father then went on vacation to the United Kingdom for two weeks.

¶3        In December 2009, Father returned to the United Kingdom on a six-month visa to be with his fiancé.  During this time, Father maintained regular telephone contact with Child.  Father traveled back to Arizona in June 2010 to get married.  On this trip, he exercised three days of parenting time with Child.  Mother refused his request for additional time, even though Father would have limited time in the United States and Child was with Mother full-time otherwise.  He then returned to the United Kingdom where he lived until August 2013, with the exception of a short return to

---

[1]        Because this is a private severance action, the Arizona Department of Child Safety is not a party.

[2]        We view the facts in the light most favorable to upholding the juvenile court's order. *Maricopa Cnty. Juv. Action No. JD-5312*, 178 Ariz. 372, 376 (App. 1994).

the United States in 2012. Throughout that time, he spoke with Child on the phone each week, and in April 2012, the family court amended the parenting time order to reflect the parties' agreement that Father would be allowed telephonic contact with Child three days per week. Father continued to telephone Child approximately three times per week. He also sent Child flowers for Valentine's Day and gifts for Easter and her birthday.

¶4            In July 2010, the family court ordered Father to pay child support, rejecting his argument that he was unable to pay because he remained unemployed and had not yet been successful in obtaining disability benefits. He made his first payment towards child support in September 2012, tendering $1,000 to quash an arrest warrant that resulted from his failure to pay the obligation. He did not make any other child support payments until 2014 when he began receiving social security disability benefits, a portion of which were garnished to pay his arrearages.

¶5            In the interim, Mother petitioned for termination of Father's parental rights, once in September 2011 and again in May 2012; both petitions were denied. However, in December 2012, the juvenile court modified the parenting time order to include a recommendation that any visitation or contact between Father and Child be done in accordance with the recommendations of a therapist. The family court dismissed Father's subsequent petition for a modification of parenting time and Mother's request for appointment of a reunification therapist and ordered Father to re-petition the court when he was a permanent U.S. resident.

¶6            In August 2013, Father returned to the United States. He did not immediately re-petition for a modification of parenting time, and in February 2014, Mother filed a third petition to terminate Father's parental rights on the ground of abandonment. Mother's petition noted she had married Jason H. (Stepfather) in June 2012, and he had been actively involved in raising Child since the parties' dissolution. Child calls Stepfather "dad," and Stepfather is willing to adopt her.

¶7            After an evidentiary hearing in September 2014, the juvenile court concluded Father had abandoned Child by failing to provide reasonable support to and maintain regular contact with Child and that severance was in Child's best interests. Father timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 8-

235(A),[3] 12-120.21(A)(1), and -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶8 A party seeking termination of parental rights must (1) establish that severance is in the child's best interests by a preponderance of the evidence, and (2) prove a statutory ground for severance by clear and convincing evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). Father argues the juvenile court erred in finding Mother proved either prong. We review a juvenile court's severance order for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004) (quoting *Maricopa Cnty. Juv. Action No. JV-132905*, 186 Ariz. 607, 609 (App. 1996)). The juvenile court abuses its discretion when its decision is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 82-83, ¶ 19 (App. 2005) (quoting *Quigley v. Tucson City Court*, 132 Ariz. 35, 37 (1982)).

¶9 In determining whether severance is in a child's best interests, the court balances the rights of the "unfit" parent against those of the child. *Jose M. v. Eleanor J.*, 234 Ariz. 13, 17, ¶ 21 (App. 2014). To justify severance, the petitioner must prove the child would be harmed from continuation of the relationship or would benefit from the severance. *Mary Lou C.*, 207 Ariz. at 50, ¶ 19; *see also Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5-6 (1990) ("Although a finding of detriment to the child is not necessary, some benefit must be gained by the child from a termination."). We accept the juvenile court's findings regarding best interests factors unless they are clearly erroneous — that is, unsupported by reasonable evidence within the record. *Mary Lou C.*, 207 Ariz. at 47, ¶ 8 (quoting *JV-132905*, 186 Ariz. at 609). However, we are not bound by the juvenile court's conclusions of law. *H.M.L. v. State*, 131 Ariz. 385, 388 (App. 1981) (citing *Tencza v. Aetna Cas. & Sur. Co.*, 111 Ariz. 226, 228 (1974), and *State Tax Comm'n v. Howard P. Foley Co.*, 13 Ariz. App. 85, 87 (1970)).

¶10 Here, the juvenile court did not identify any harm to Child in maintaining a parental relationship with Father; instead, it found Child had an established relationship with Stepfather, Stepfather was willing and able to adopt Child, and Child wished to be adopted by him. In contrast, the court found Child "does not want a relationship with Father," and that this

---

[3]      Absent material revisions from the relevant date, we cite a statute's current version.

circumstance was "more likely" a result of Father's lack of participation in her life than of Mother's disclosure to Child of Father's affair that ended their marriage. Based upon these findings, the court concluded Child would benefit from the severance because it would free her to be adopted by Stepfather and "ensure that the Child is able to remain with [Stepfather] and the Child's half-sibling[s] if something should ever happen to mother."

¶11        Although the juvenile court's factual findings are supported by reasonable evidence within the record, these findings are inadequate, as a matter of law, to establish that severance is in Child's best interests. This Court has previously explained that a best interests finding is insufficient if based only upon the potential that the child would be available for adoption by the mother's fiancé. *Jose M.*, 234 Ariz. at 17-18, ¶ 23. In *Jose M.*, we held:

> Because it appears that [child]'s living arrangement already offers stability and permanence, Mother's stated intent to marry fiancé . . . and fiancé's interest in adopting [child] . . . do not establish an increase in stability and permanency for [child] to the degree necessary to demonstrate a benefit warranting severance of Father's parental rights.

*Id.*

¶12        Here, as in *Jose M.*, Child has a permanent and stable living arrangement in Mother's home. *See id.* While we have no doubt Child benefits from Stepfather's presence in the home and active role in her upbringing, both Mother and Stepfather testified neither the living arrangements nor Stepfather's participation in Child's life would change if Father's parental rights were not terminated. Stepfather even went further to say that having two male figures in her life would be a benefit to Child. And, as in *Jose M.*, there is no evidence that Father's interactions with Child have been harmful to her, that he has been abusive or violent toward Child, that he possesses personal characteristics that would render him incapable of parenting, or that he would be unwilling to participate in therapy to more meaningfully develop his relationship with Child. *See id.* at 17, ¶ 22.

¶13        The biological parent has a constitutionally protected interest in the care, custody, and management of his child, and the child's best interests do not turn on the comparative willingness and ability to parent, as between a father and stepfather. *See Maricopa Cnty. Juv. Action Nos. JS-4118 and JD-529*, 134 Ariz. 407, 410 (App. 1982) ("To give such rights [of custody or control of a minor child] to step[parents] would invade the rights of the natural parents and would further endanger the welfare of

children by pitting rights of stepparents against those of the natural parents."). In the absence of a finding that detriment or harm to the child would result if the relationship with the biological father is *not* severed, the mere availability of a stepparent to adopt does not, as a matter of law, justify termination of Father's rights. *See Jose M.*, 234 Ariz. at 17-18, ¶ 23 (noting that while a child in foster care derives a benefit from severance because stability and permanency can thereafter be established, these same benefits do not apply to a child already in a stable home) (citing *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334-35, 337, ¶¶ 6-8, 16 (App. 2004)). Something more must be shown to override Father's constitutional right to parent.

¶14 Mother argues *Jose M.* is distinguishable because the potential adoptive parent in *Jose M.* was not married to the biological parent and they had no other children in common. However, the conclusion in *Jose M.* did not turn on some perceived instability in the mother's relationship with the future stepparent, but rather, the failure of the mother to establish that the stability and permanence the child was already experiencing in her home would be enhanced through adoption by her fiancé, especially in the absence of any harm to the child in maintaining the parental bond between the child and her biological father. *Id.* at 17-18, ¶¶ 22-23. The rationale of *Jose M.* applies regardless of the fact that Mother and Stepfather are married and raising Child with two half-siblings.

¶15 Mother also argues she has proven that the stability and permanency of Child's situation *would* be enhanced through adoption by Stepfather because, if something were to happen to her, Child would be able to remain with Stepfather and her half-sibling. This preference is likewise insufficient to justify severance. *See JS-500274*, 167 Ariz. at 7 (finding a parent's desire to nominate someone other than the remaining natural parent to serve as guardian of a child in the event of the parent's death "fails to show any present benefit to [the child]"). Moreover, the decision regarding severance must be based upon those facts presently before the juvenile court and not upon a hypothetical future tragedy. *See id.* (finding mother's contention that "just in case she gets married in the future and just in case her future husband wishes to adopt [the child]" was too speculative to establish severance was in child's best interests).

¶16 Finally, Mother argues severance would permit Child to discontinue contact with Father, which Mother asserts Child "does not enjoy." Although discontinuing contact with Father could be perceived as a benefit to Child, we find this objective to be short-sighted and not truly in Child's best interests. It would be difficult to identify any child who

achieves adulthood having escaped unpleasant interactions with at least one parent. Our opinion in this regard is not swayed by the juvenile court's finding that Father is "more likely" than Mother to blame for Child's dislike of him. The court made no finding that Child would be harmed by contact with Father, and it would be cavalier to allow a now ten-year-old child to dictate the legal rights of a parent in the absence of harm.

¶17       Moreover, despite the feelings Child reportedly has toward Father now, the record suggests the current situation has resulted, at least in part, from circumstances largely outside of Father's control, i.e., Mother's unwillingness to support his relationship with Child and both parties' difficulty in obtaining a professional to assist with therapeutic visitation. It is likely that the relationship between Father and Child will change and develop with time. In the absence of any proven material benefit to Child in severing Father's parental rights, each must be given that chance. *See id.* (vacating a severance order that would "deny[] the child a 'sincere' father for a mere speculative potential benefit that might or might not materialize sometime in the future.").

¶18       The findings of the juvenile court are insufficient to support its conclusion that severance would provide any present and material benefit to Child. We therefore conclude the juvenile court erred in ruling Mother proved severance was in Child's best interests.[4]

**CONCLUSION**

¶19       For the foregoing reasons, we vacate the order terminating Father's parental rights.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

---

[4]       Because we find the evidence did not establish severance was in the best interests of Child, we do not address whether the juvenile court abused its discretion in concluding Father abandoned Child. *See JS-500274*, 167 Ariz. at 5 (holding that the best interests of a child could be a "sufficient reason for a denial of termination").